Feliciano G. **RODRIGUEZ**, Appellant,

v.

**B–R DREDGING COMPANY, INC.**, Appellee.

No. 1146.

Court of Civil Appeals of Texas, Corpus Christi.

May 31, 1977.

Rehearing Denied June 23, 1977.

William R. Edwards, Corpus Christi, for appellant.

S. E. Dyer, Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, for appellee.

## OPINION

YOUNG, Justice.

Under the Jones Act, 46 U.S.C. § 688, and under the general maritime law, Feliciano G. Rodriguez, brought suit as a seaman for bodily injuries sustained when he fell through an open deck hatch or manhole on the tender boat, *Burley Koen,* while employed by the defendant, B–R Dredging Company, Inc. As the basis of his cause of action, Rodriguez alleged negligence and unseaworthiness, and negligence and unseaworthiness *per se* for the violation of statutory duties imposed by the Corps of Engineer safety regulations. Dredging Company answered denying any unseaworthiness or negligence, disputing the applicability of the safety regulations and alleging that plaintiff was contributorily negligent. Prior to trial, Dredging Company specially excepted to those parts of Rodriguez's petition dealing with inadequate lighting. The trial court sustained those exceptions.

Trial was to the jury which found the defendant negligent, the vessel unseaworthy, the plaintiff 55% contributorily negligent, and the damages to be $150,000.00.

After applying the comparative fault doctrine of the Jones Act and allowing credits for maintenance payment, the trial court reduced the award to $55,388.02 and entered judgment for the plaintiff. The plaintiff appeals from that judgment.

At the time of this accident, January 24, 1974, Rodriguez was the captain of the tender boat, *George Pospisil.* The *George Pospisil* and the *Burley Koen* were assigned to the dredge, *Bill Bauer,* while it was working in the Corpus Christi Ship Channel under a contract between T. J. James and Company, Inc., as prime contractor, and Dredging Company, as subcontractor. The contract between James and Dredging Company was a subcontract under a prime contract between James and the U.S. Army Corps of Engineers. Both of these tender boats were tied to the starboard side of the *Bill Bauer* on the day of the accident.

Rodriguez and his deck hand, Domingo Zamarripa Reyna, were working the 12:00 midnight until 12:00 noon shift on the day in question and were preparing to go ashore to pick up the day crew. This transportation of the day crew was one of the duties assigned Rodriguez as the captain of the *George Pospisil.* The *George Pospisil* would not start, however, and Rodriguez dispatched Reyna to locate a set of forty-foot jumper or booster cables. He was unable to locate the cables aboard the dredge. Whereupon Rodriguez and Reyna then began a systematic search of the dredge and its tender boats eventually coming to the *Burley Koen.* They arrived at the *Burley Koen* between 5:30 and 6:00 a.m. It was still dark and somewhat foggy. Between them they had one flashlight for their search, although others were available.

They boarded the *Burley Koen* from the port side with Rodriguez leading. In their search for the cables, they passed the wheelhouse without turning on the deck and running lights of the *Burley Koen* and proceeded down the side of the vessel to the stern. Reyna was following Rodriguez about a foot to a foot and one-half behind and was shining the flashlight on the deck in search of the cables. When they reached the stern, Reyna shined the flashlight toward the cabin and at that moment Rodriguez stepped into an open hatch or manhole located on the starboard side of the stern deck of the *Burley Koen;* by this unfortunate action he received the injuries he complained of. Neither Rodriguez nor Reyna saw the hatch or manhole prior to the accident. It is undisputed that the hatch or manhole was completely uncovered and unguarded when the accident occurred and that the cover had been removed by employees of Dredging Company.

Appellant has brought forward six points of error. In point 1 he maintains that the trial court erred in submitting special issues about his contributory negligence and in reducing his recovery based on the jury's answers to those special issues.

In that regard, this case was submitted to the jury on eighteen special issues. The jury found in issues 1 through 12 negligence of Dredging Company and unseaworthiness of the *Burley Koen.* The jury further found: 13) that Rodriguez's failure to turn on the *Burley Koen* deck and mast lights was negligence; 14) that such failure caused or contributed to the occurrence in question; 15) that Rodriguez's failure to use a flashlight was negligence; 16) that such failure caused or contributed to the occurrence in question; 17) that 55% of Rodriguez's injuries was attributable to his negligence; 18) that Rodriguez's damages were $150,000.00. Based on that verdict the trial court in the judgment reduced by 55% the amount awarded to Rodriguez by the jury.

The appellant says that the submission and reduction were erroneous because his injuries were legally caused by the appellee's violation of a statutory duty. The basis of the appellant's argument is the adoption in the Jones Act, 46 U.S.C. § 688, of the provisions in the earlier enacted Federal Employers' Liability Act, (FELA), 45 U.S.C. § 51 *et. seq.* The Jones Act extends to seamen all the rights and remedies provided railroad workers under the FELA.

Section 53 of the FELA provides in part as follows:

". . . . *Provided*, that no such employee (of a common carrier by railroad) who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

This section of the FELA has been held to apply to violations of the Safety Appliance Act, the Boiler Inspection Act, and the Hours of Services Act. *San Antonio & Aransas Pass Railway Company v. Wagner*, 241 U.S. 476, 36 S.Ct. 626, 60 L.Ed. 1110 (1916); *Baltimore & Ohio Railroad Company v. Wilson*, 242 U.S. 295, 37 S.Ct. 123, 61 L.Ed. 312 (1916); *Miller v. Gulf, Mobil & Ohio Railroad Company*, 386 S.W.2d 97 (Sup.Ct.Mo.1964). In practice, the application of these acts to the FELA has meant that where an employee subject to the FELA is injured or killed because of a violation of one of these acts, the employer will be held liable and damages are not to be diminished in proportion to the employee's degree of fault. The Jones Act incorporates the FELA and its decisional law, and consequently makes all rights enjoyed by railroad employees under the FELA available to seaman. *Hopson v. Gulf Oil Corp.*, 150 Tex. 1, 237 S.W.2d 352 (1951). The question has arisen here whether violations of analogous maritime safety statutes will preclude consideration of contributory negligence. It is the opinion of this Court that it will so preclude.

The Supreme Court in speaking to interplay between the rights of seaman under the Jones Act and the FELA said:

". . . The Jones Act, in providing that a seaman should have the same right of action as would a railroad employee, does not mean that the very words of the F.E.L.A. must be lifted bodily from their context and applied mechanically to the specific facts of maritime events. Rath-

er, it means that those contingencies against which Congress has provided to ensure recovery to railroad employees should also be met in the admiralty setting." *Cox v. Roth*, 348 U.S. 207, 209, 75 S.Ct. 242, 243, 99 L.Ed. 260 (1955).[1]

We think, therefore, that the clear intent of Congress in its passing of the Jones Act and the incorporation by reference of the FELA was that an injury to or death of a seaman resulting from his employer's violation of a safety statute bars consideration of contributory negligence.

In *Neal v. Saga Shipping Co.*, 407 F.2d 481 (5th Cir. Tex.1969), *cert. denied*, 395 U.S. 986, 89 S.Ct. 2143, 23 L.Ed.2d 775 (1969), the Fifth Circuit, in dictum, also answered this question in the affirmative. *Neal* involved the wrongful death of a longshoreman and appellants there argued that the Jones Act applied to longshoreman and, therefore, Sec. 53 of the FELA applied. The Court noted in passing on this argument that if the deceased had been a seaman instead of a longshoreman, the shipowner could not have pressed the issue of decedent's own negligence.

All of which brings us to a determination of whether the regulations asserted by appellant come within the following language of Sec. 53 of the FELA: "any . . statute enacted for the safety of the employees . . ." It is appellant's contention that Section 7.602–42 of the Code of Federal Regulations has the effect of law, was promulgated for the safety of those people covered by the regulation and that it adopts the Corps of Engineer's Safety Regulations which form the basis of the statutory violation here urged. This regulation, 32 CFR § 7.602–42, is as follows:

" § 7.602–42 Accident prevention.

(a) Normally the following clause concerning safety controls, record, reports and corrective action to be taken shall be inserted.

---

[1]. In applying this rule, the Supreme Court held that a Jones Act action did not abate on the death of the defendant tortfeasor on the analogy that the F.E.L.A. (Sec. 57) provided for the prosecution of actions against receiver of insol-

vent railroads. The previous admiralty rule was that such actions did not survive. See *Kernan v. American Dredging Company*, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958).

ACCIDENT PREVENTION (JUNE 1967)

(a) *In order to provide safety controls for protection to the life and health of employees and other persons*; for prevention of damage to property, materials, supplies, and equipment; and for avoidance of work interruptions in the performance of this contract, *the Contractor shall comply with all pertinent provisions of Corps of Engineers Manual, EM 385–1–1, dated March 1, 1967, entitled "General Safety Requirements,"* as amended, and will also take or cause to be taken such additional measures as the Contracting Officer may determine to be reasonably necessary for the purpose.

\* \* \* \* \* \*

(d) Compliance with the provisions of this article by subcontractors will be the responsibility of the Contractor." (Emphasis supplied)

The Supreme Court in *Kernan v. American Dredging Co.*, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958), set down the basic principles governing the liability of employers for statutory violations. In *Kernan*, a seaman was killed when a tug boat on which he was employed caught fire. The tug had been towing a scow through a river covered with petroleum products which created a layer of highly flammable vapors immediately above the water. A kerosine lamp had been placed on the scow about three feet above the water. The lamp ignited the vapors causing the fire which in turn caused the seaman's death. The plaintiff contended that a Coast Guard navigation regulation provided that a lamp was not to be maintained at a height of less than eight feet, and that the defendants' violation of this statute imposed liability. The defendants countered that the regulation was intended to prevent collisions only and that no duty was owed the seaman here since his injury was not one which the regulation was designed to prevent. The Supreme Court found for the plaintiff on the facts after relying upon the several decisions under the FELA with the following reasoning:

"We think that the irrelevance of the safety aspect in these cases demonstrates that the basis of liability is a violation of statutory duty without regard to whether the injury flowing from the violation was the injury the statute sought to guard against. It must therefore be concluded that the nature of the Acts violated is not a controlling consideration; the basis of liability is the FELA."

In arriving at this conclusion, the Court pointed out the purpose of the pertinent legislation in this language:

". . . . Therefore, as industry and commerce became sufficiently strong to bear the burden, the law, the reflection of an evolving public policy, came to favor compensation of employees and their dependents for the losses occasioned by the inevitable deaths and injuries of industrial employment, thus shifting to industry the "human overhead" of doing business. For most industries this change has been embodied in Workmen's Compensation Acts. In the railroad and shipping industries, however, the FELA and Jones Act provide the framework for determining liability for industrial accidents. But instead of a detailed statute codifying common-law principles, Congress saw fit to enact a statute of the most general terms, thus leaving in large measure to the courts the duty of fashioning remedies for injured employees in a manner analogous to the development of tort remedies at common law. *But it is clear that the general congressional intent was to provide liberal recovery for injured workers,* . . . and it is also clear the Congress intended the creation of no static remedy, but one which would be developed and enlarged to meet changing conditions and changing concepts of industry's duty toward its workers." (Emphasis supplied.)

Justice Cardozo in *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932) also recognized the general intent of Congress to provide liberal recovery for injured workers when he said:

". . . Congress did not mean that the standards of legal duty must be the same by land and sea. Congress meant no more than this, that the duty must be legal, i. e., imposed by law; that it shall have been imposed for the benefit of the seaman, and for the promotion of his health or safety; and that the negligent omission to fulfill it shall have resulted in damage to his person. When this concurrence of duty, of negligence and of personal injury is made out, the seaman's remedy is to be the same as if a like duty had been imposed by law upon carriers by rail."

■ Returning to the present case, it is clear that regulations enacted under statutes providing for a comprehensive policy for government procurement have the force of law. *Paul v. United States*, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); *Public Utilities Commission of State of California v. United States*, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). The regulations involved in the present case receive their authority from 10 U.S.C. 2202 and 32 C.F.R. Part 7, p. 496 (1974). 10 U.S.C. 2202 grants to the Secretary of Defense the power to prescribe regulations to achieve an integrated system of military procurement as here set out:

"Notwithstanding any other provision of law, an officer or agency of the Department of Defense may obligate funds for procuring, producing, warehousing, or distributing supplies, or for related functions of supply management, only under regulations prescribed by the Secretary of Defense. The purpose of this section is to achieve the efficient, economical, and practical operation of an integrated supply system to meet the needs of the military departments without duplicate or overlapping operations or functions."

Pursuant to this authority, 32 CFR, Sec. 7.602–42 (1974) was promulgated and it adopted by reference all pertinent provisions of Corps of Engineers Manual, EM 385–1–1, dated March 1, 1967, entitled "General Safety Requirements." To us, this regulation as well as its adopted provisions, therefore, has the full force of law.

The Corps of Engineers, through the Department of Army, has authority over improvements to rivers, harbors and other waterways. 33 U.S.C. Sec. 540. Section 26.B.04 of the Corps' Regulations, which forms the basis of appellant's statutory violations, falls within Section XXVI of the Corps' safety requirements which is entitled "Floating Plant and Marine Locations." Further, Section 26.B.04 provides that deck openings should be guarded. It is the opinion of this Court that Section 26.B.04 applies to the present case.

At this point we note that the appellee, in its response to appellant's request for admission, has admitted a violation of this provision (Section 26.B.04) and the jury in answer to special issue 6 found that the failure to guard the hatch or manhole caused or contributed to Rodriguez's injuries.

The basic purpose of the regulations invoked by appellant is the promulgation of uniform contract provisions for the procurement of government supplies and services. 32 CFR § 1.101. We also note, however, that the particular regulation under discussion here (Section 7.602–42) is entitled "Accident Prevention" and specifically states that its purpose is for the safety of employees. Logically then within 32 CFR there is contained a two-fold purpose; standardizing of federal procurement contracts and providing for the safety of employees. It is the opinion of this Court, therefore, that the regulation in question is within the broad language used by Section 53 of the FELA.

■ Appellees cite *Quinn v. United States*, 312 F.Supp. 999 (S.D.Ark.1970), for the proposition that the Corps of Engineer regulations do not have the force of law. In the present case, the Corps of Engineer's safety requirements are a part of the CFR regulations promulgated pursuant to statutory authorization and as such have the force and effect of law. See *Paul v. United States*, supra; *Public Utilities Commission of California v. United States*, supra. In *Quinn*, there is no showing of such authori-

ty behind the Corps' regulations there considered. We are of the opinion, therefore, that Quinn is not controlling here.

In summary, because Dredging Company violated a statutory duty within the meaning of Section 53 of the FELA, the trial court erred in submitting special issues to the jury inquiring about the contributory negligence of Rodriguez and erred in reducing Rogriguez's recovery based on the jury's answers to those special issues. These actions by the trial court require us to reverse a part of the judgment and to hold that Rodriguez is entitled to his recovery without the 55% reduction. Appellant's point 1 is sustained.

In his point 2, the appellant contends that the trial court erred in sustaining appellee's special exceptions to that part of his petition alleging inadequate lighting on the *Burley Koen.*

This error, if there was error, we find to be harmless error under Rule 434, T.R.C.P. (1976) as we will demonstrate. The jury found appellee liable and found damages to Rodriguez of $150,000.00. The jury also found Rodriguez 55% contributorily negligent. As a result, the trial court applied the FELA comparative negligence theory and reduced the damages accordingly. But we have sustained appellant's first point of error and have thereby precluded any consideration of contributory negligence.

█ What we have then is a point asserting error because the trial court denied an alternate form of liability. It is the general rule in that instance that there can be no error in the trial court's sustaining exceptions to an alternate theory where the plaintiff has recovered on some other basis of liability. *Rains v. Wheeler,* 76 Tex. 390, 13 S.W. 324 (1890); See *City of Lubbock v. Onley,* 498 S.W.2d 429 (Tex.Civ.App., Amarillo 1973, writ ref'd n. r. e. 506 S.W.2d 208); *Hawes v. Central Texas Production Credit Association,* 492 S.W.2d 714 (Tex.Civ.App., Austin, 1973, aff'd 503 S.W.2d 234). Appellant's point 2 is overruled.

Finally, similarly to his attack in point 1, the appellant in his points 3, 4, 5, and 6 attacks the trial court's action in submitting to the jury special issues concerning the contributory negligence of the appellant and the consequent reduction of his damages based on the jury's answers to those issues. In these last points the appellant's complaints address the legal and factual insufficiency of the evidence and the misplacement of the burden on appellant to foresee appellee's negligence.

█ Again, if there was error, it was harmless error within Rule 434, T.R.C.P. This is so because in our consideration of appellant's first point we held that appellant's contributory negligence could not be used as a basis for reducing appellant's recovery. Even so, we have examined the record and we have determined that if it were proper to submit the special issues complained of, then the evidence is legally and factually sufficient to support the jury's answers to those special issues. Also, in view of the trial court's instructions, accompanying the charge, about no requirement of foreseeing negligence, the appellant's complaint about the appellant's burden in that regard has no merit. Appellant's points 3, 4, 5 and 6 are overruled.

Therefore, that part of the trial court's judgment reducing by 55% the appellant's damages is reversed and it is here rendered that the appellant recover of the appellee the sum of $150,000.00 less $12,111.98 for maintenance plus costs and interest. The trial court's judgment is in all other respects affirmed.