GREAT ATLANTIC & PACIFIC TEA CO.
v. GARNER.

No. 13305.

Court of Civil Appeals of Texas. Dallas.

Jan. 8, 1943.

Rehearing Denied April 9, 1943.

Touchstone, Wight, Gormley & Touchstone, of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

YOUNG, Justice.

Appellee brought suit against the Great Atlantic & Pacific Tea Company for injuries sustained while employed as a checker in one of the local stores of that concern. Appellant, though eligible, did not elect to come under the provisions of the Workmen's Compensation Act, Vernon's Ann. Civ.St. art. 8306 et seq.; hence, the action is one at common law, charging negligence of the employer; i. e., a failure to exercise ordinary care in the matter of providing plaintiff Garner with a safe place in which to work.

Following a jury verdict, judgment was rendered against appellant for $2,999.99. From a preponderance of the evidence the jury answers established that, (1) defendant failed to furnish plaintiff with a reasonably safe place to work, in that, the place in question was wet, slick and slippery; (2) defendant failed to furnish a rubber mat either in the check stand or at the place where defendant checked groceries to its customers at and prior to the time of plaintiff's alleged fall; (3) defendant failed to mop the floor of plaintiff's checker cage and make it dry immediately before his fall and injuries; (4) defendant failed to put something either behind or in said cage and upon which plaintiff could stand on the occasion and prior thereto; (5) there were substances of a wet, slick and slippery nature in the place where plaintiff stood as he performed his duties of checking groceries, which defendant failed to remove; (6) defendant failed to provide a dry place for plaintiff to stand while checking groceries to customers; (7) defendant placed and handled vegetables in said store in such manner as that the same were dripping with water and so wet that when placed in baskets by defendant's customers, water would drip on the counter and run down into the cage where plaintiff was working, and make the cardboard on which he was standing wet and slippery. The jury likewise answered that each of above factors constituted negligence on part of appellant, and a proximate cause of the injuries complained of.

The store operated by appellant was a modern self-serving grocery, where customers, on entry, by using a basket and cart, would pick up such groceries as they desired and bring them to the checking counters, arranged in four lanes, each, when in use, being served by a checker, one of whom at the time was plaintiff. The place where he stood was separated from the customers' lane by a counter, upon which was a cash register. Plaintiff would remove, one by one, the items purchased, checking and totaling the amounts by means of the register. The store had recently been renovated and the floor was of concrete. No specific provision had been made by appellant for covering the floor of the checker cage, except that corrugated paper boxes were available for tearing up and use to stand upon. It appeared that the vegetables sold by appellant were usually in a damp condition, for purpose of freshness; and that, in taking such purchases from baskets, water would drip therefrom and leaves of lettuce or other vegetables would drop to the floor of the cage, making it wet and requiring constant cleaning. A part of plaintiff's duties was to lift the loaded baskets from passageway onto the counter for checking; and while thus engaged, as he testified, on account of the condition of said floor, his feet slipped, resulting in the claimed injuries.

Appellant's grounds for reversal of the cause are summarized: (1) error in overruling its motion for instructed verdict, in that, plaintiff wholly failed to establish negligence of the store company; the evidence indisputably showing that the injuries were consequent upon plaintiff's own failure of duty; (2) error in refusing to submit the unavoidable accident issue requested by defendant, because same was raised by both pleading and evidence; (3) the jury made two separate answers to Issue 26 on amount of damages; hence the court erred in rendering judgment for $2,999.99 (being one of the dual answers); (4) since the evidence showed that defendant was not under duty to furnish a rubber mat, or mop the check stand, or to remove the substances inquired about in Issue 16 (of a wet, slick and slippery nature), the

court erred in submitting issues thereon, numbered 5, 10 and 17.

The question of whether a master has failed to exercise ordinary care to provide the servant with a safe place in which to work is ordinarily one of fact; unquestionably so, under plaintiff's testimony and the attendant circumstances of this record. The court, therefore, did not err in overruling defendant's request for an instructed verdict. Also without merit is appellant's contention that it was plaintiff's own duty, under terms of his employment, to keep the cage floor clean; rendering inapplicable the well-settled principle that "* * * the master may relieve himself of liability by intrusting to his servant the duty of inspection and care in respect of a place he is engaged in making safe or which by contract he is bound to make safe * * *." 39 C.J., p. 325, § 446. While plaintiff testified that he considered it his duty to clean the cage when he was not busy, yet the following is an excerpt from the store manager's own testimony: "Q. Now those cages, why you usually furnished those package boys around there to clean out these cages, didn't you? A. They had a bell; if they need help they called for the boy, it was up to them to get the boy there." It was further elicited from plaintiff that he had theretofore complained to Mr. Wilkins (manager) of the wet and slippery condition, asking for a rubber mat, which had been promised; that his fall occurred during a busy period of the afternoon; the cage having been cleaned shortly before, but that he had just reported to Mr. Wilkins a renewed unsatisfactory condition, followed by assurance from the latter of prompt relief. As already stated, we conclude plaintiff's own narrative of fact was sufficient basis for all issues comprehended in the court's charge. Both appellant's manager and his assistant testified that the cage construction was usual and customary for that type of grocery store; even so, the jury question still remained of "whether, under the facts of the particular case, there has been an absence of ordinary care"; French v. Southwestern Telegraph & Telephone Co., Tex.Civ.App., 162 S.W. 406, 409, affirmed by Supreme Court, 110 Tex. 505, 221 S.W. 570; Comanche Duke Oil Co. v. Texas Pacific Coal & Oil Co., Tex.Com.App., 298 S.W. 554.

No error is shown by the court's refusal of defendant's requested Issue 1 on unavoidable accident, because the matter was not affirmatively raised by defensive pleading. Only a general denial was interposed to the merits of plaintiff's cause of action. This cause was tried after September 1, 1941, when the new Rules of Civil Procedure became applicable. Rule 279 provides in part: "* * * except in trespass to try title, statutory partition proceedings and other special proceedings in which the pleadings are specially defined by statutes or procedural rules, a party shall not be entitled to an affirmative submission of any issue in his behalf where such issue is raised only by a general denial and not by an affirmative written pleading on his part." See, also, 20 Tex.Law Review, p. 37. Even under the new Rules, the refused issue was not in "substantially correct wording" (Rule 279), in that same was not accompanied by a legal definition of unavoidable accident, an essential element thereof.

The jury verdict on amount of damage (No. 26) reads:

"Answer: Two Thousand Nine Hundred & Ninety Nine cents        $2,999.99"

Explanatory of the quoted answer are the following recitals in the judgment appealed from: "* * * the court finds as a fact that while the clerk, under the directions of the court, was reading the answers of the jury to the issues submitted, read issue No. 26 and read out the following answer: 'Two Thousand Nine Hundred & Ninety-nine Cents,' whereupon the foreman of the jury said, 'You are not reading that right,' and the court directed the clerk to read further, and whereupon the clerk read out the following words: 'Two Thousand Nine Hundred Ninety-nine Dollars and Ninety-Nine Cents,' and proceeded to finish reading the verdict. And with the jury still in the box at the conclusion of the reading of the verdict, the Court inquired: 'Gentlemen of the Jury, are the answers just read back to you by the Clerk your answers to the special issues submitted to you in this case?' To which the Jury answered 'Yes.'"

Appellant contends that on the face of the jury verdict, two separate answers were made on damages, and that it was error for the trial court to choose one of the two fixed amounts and render judgment thereon; also, that the court's informal method of correcting the verdict was violative of Rule 290 (old Art. 2202), reading in part:

"A verdict is a written declaration by a jury of its decision, comprehending the whole or all the issues submitted to the jury \* \* \*."

■ No objection was made by appellant to the court's method in resolving the ambiguity that first appeared in the jury's answer on damages, nor was a poll of that body requested (Rule 294). The defect in question could have been definitely cured by the foreman's insertion of the words "Ninety-nine Dollars" in their written answer; however, the procedure used, in light of judgment recitals, was in substantial accord with Rule 295, providing: "If the verdict is informal or defective, the court may direct it to be reformed at the bar." This Rule states further that, "If it [the verdict] is not responsive to the issue submitted, or contains conflicting findings, the court shall call the jury's attention thereto in writing and send them back for further deliberation"; and in this connection, defendant argues that aforesaid confused situation required a mandatory compliance with the language last quoted. But here, no conflict existed such as to necessitate the jury's retirement "for further deliberation"; because the irregularity was promptly called to the court's attention by the jury and correction made at the bar; thus fixing the amount "$2,999.99" as the unequivocal declaration by that body of its true verdict.

Our conclusions just reached are entirely consistent with Cookeville Coal & Lumber Co. v. Evans, Tex.Civ.App., 135 S.W. 750, 751 (cited by appellant), where the verdict returned was, "We, the jury, find for the plaintiff and assess her damages at the sum of $150.00, One Hundred and 50/100"; and the ambiguity was sought to be cured by an ex parte affidavit after the jury's dismissal. Under those facts, Judge Hodges held: "There is nothing to indicate that the attention of the jurors was called to the ambiguity of their language, and the verdict was received as it had been prepared and returned by them. Article 1323, Sayles' Ann.Civ.St.1897 [Rules of Civil Procedure, rule 290], requires the verdict to be in writing. If there are to be any corrections as to the form, they must be made and the consent of the jurors obtained before their discharge."

The briefs and record have been carefully studied; no reversible error being found, the trial court's disposition of the cause will be affirmed.

Affirmed.

## On Motion for Rehearing.

■ The first thirty-five pages of appellant's motion for rehearing is primarily in criticism of the trial court's action in excluding certain evidence involving customary methods of similar grocery stores in the use of rubber mats. The matter complained of was not set up in motion for new trial, nor·was it made a point upon which appeal was predicated. Relating as it does to the admissibility of evidence, the ruling was not fundamentally erroneous. We are thus without jurisdiction to review its demerits now. White v. Glengarry Oil Co., Tex.Com.App., 156 S.W.2d 523.

However, an element of novelty attaches to appellant's discourse that deserves brief mention. It is argued: That the employer is here charged with negligence in failing to equip the place of work with an alleged safety appliance—a rubber mat; that the best evidence on such issue revolves around customary methods of employers engaged in like business and under similar circumstances; that this record is wholly devoid of evidence touching usages and practices of other self-service grocery stores in the matter of rubber mats for check stands, resulting in the absence of any legal standard by which the jury could assess appellant's conduct in the particular situation, i. e., whether negligent or not. The further point seems to be that, in such cases, all definitions of ordinary care and negligence should be limited to "the usages and habits of average, reasonable and prudent employers in similar circumstances."

■ Evidence of custom is, of course, admissible as tending to prove what an ordinarily prudent man would do; but such evidence is not essential to a finding on the issue, nor conclusive thereof when so introduced. Exporters' & Traders' Compress & Warehouse Co. v. Hemphill, Tex.Civ. App., 292 S.W. 599; Cameron Compress Co. v. Whitington, Tex.Com.App., 280 S. W. 527; Gulf, C. & S. F. Ry. Co. v. Irick, Tex.Civ.App., 116 S.W.2d 1099; for a custom itself may fail to conform to the minimum requirements of ordinary care; 45 C. J., Negligence, § 87, p. 706, 708.

Irrespective of the rubber mat issue, and of what constitutes competent evidence in

that connection, independent findings amply support plaintiff's judgment. Appellant suggests the impossibility of procuring rubber mats, but the date of injury was almost a year prior to December 7, 1941.

The motion will be overruled.

BOND, C. J., dubitante.