Jayne B. CHANCE et vir, Appellants,

v.

J. W. SCARBROUGH et al., Appellees.

No. 10481.

Court of Civil Appeals of Texas.

Austin.

May 29, 1957.

Rehearing Denied June 19, 1957.

Sam Amster, Cofer & Cofer, all of Austin, for appellants.

Graves, Dougherty & Greenhill, Thomas G. Gee, James R. Meyers, Coleman Gay, all of Austin, for appellees.

GRAY, Justice.

Appellants, Jayne B. Chance and husband C. L. Chance, sued appellees, J. W. Scarbrough and Lem Scarbrough individually and as trustees for the E. M. Scarbrough Trust, to recover damages for personal injuries sustained by Jayne B. Chance when she fell as she was leaving an elevator on the eighth floor of the Scarbrough Building in the City of Austin.

It was alleged that the Scarbrough Building was an office building; that appellees maintained and operated the building and the elevators and halls therein for the use and benefit of tenants and the general public; that Jayne B. Chance was an employee of a tenant with offices on the eighth floor of the building; that on November 9, 1954, she was returning from lunch to the office where she was employed.

"In doing so she entered the elevator to the right as you enter the building, or the west elevator, and the operator of said elevator, an employee of the defendants proceeded to carry her to the eighth floor. When the elevator reached the eighth floor the elevator operator opened the doors leading from the elevator to the hall and she started out of the elevator. As she stepped forward with one foot raised to leave the elevator and the other foot still on the elevator, the elevator moved upward throwing her off balance and causing her to fall forward, and as she was falling forward off balance she stepped upon a substance just outside the elevator door on the floor of the hall, which she later learned to be wax, and which caused her foot to slip out from under her as she was off balance and in the act of falling forward by reason of the movement of the elevator as she was getting off, and caused her to fall heavily to the floor of the hall with such force as to inflict on plaintiff Jayne B. Chance serious, painful and disabling permanent injury."

In other paragraphs it was alleged:

"Plaintiffs further show that the elevator operator opened the door of the elevator before the upward movement of the elevator had stopped, and while in control of the said elevator the elevator operator, an employee of the defendants, caused the said elevator to move upward while the plaintiff Jayne B. Chance was in the act of getting off the said elevator, and that such act was in violation of the duty owed to plaintiffs to operate the elevator in a safe manner.

"The injury to the plaintiff Jayne B. Chance, as a result of the foregoing occurrence, was due to the carelessness and negligence of the defendant's employee who operated the said elevator, and to the carelessness and negligence of the defendants' employee who, while he was waxing the elevators, dropped some of the wax on the floor of the hall on the eighth floor of said building just outside the elevator doors. The violation of each of such duties owed to plaintiffs contributed to her fall and to her resultant injuries, * * * "

and in still another paragraph of the petition it was alleged:

"That the defendants as owners, managers and operators of the said building were required by statute to equip the said elevators and particularly the elevator in which plaintiff Jayne B. Chance was riding with a device that would prevent moving or movement of the elevator with its gate or door open. That plaintiffs would show that in fact the said elevator was moved or did move when the entrance doors thereto were open, and that such movement of the elevator when its doors were open separately caused said plaintiff to fall and proximately caused her injury hereinafter set out."

Appellees answered and admitted ownership of the building in question; that Jayne B. Chance was an employee of a tenant, and that the Trust operated elevators in the building but that the same were kept in repair by Otis Elevator Company, an independent contractor, under a contract arrangement. They did not dispute the reasonableness of the expenses incurred by appellants but denied that any of such charges and expenses were necessitated by the matters alleged. They especially denied:

"(1) That on the occasion in question the elevator operator, an employee of the defendants, caused the said elevator to move upward while the plaintiff, Jayne B. Chance, was in the act of getting off the said elevator.

"(2) That defendants operated the elevator in question without first having equipped it with a device that would prevent its being moved when the entrance doors thereto were open;

"(3) That there was, on the occasion in question, any wax dropped by defendant's employee on the floor just outside the elevator doors which caused Mrs. Chance's foot to slip out from under her."

Appellees alleged that the injuries of Jayne B. Chance were caused by her own negligence or that the same were caused by an unavoidable accident. They filed a cross action against Otis Elevator Company and prayed that in the event any judgment was rendered against them that they have judgment over against Otis Elevator Company for indemnity or contribution.

Otis Elevator Company filed an answer and at the conclusion of the evidence before a jury it moved for an instructed verdict in its favor. This motion was granted and a judgment was accordingly rendered. No appeal was taken from that judgment, it is not before us for review and will not be further noticed.

Thirteen special issues were submitted to the jury but only six were answered. These issues and their answers are

"Special Issue No. 1:

"Do you find from a preponderance of the evidence that on November 9, 1954, the defendants failed to equip the elevator in question with a device to prevent moving said elevator while the door on the eighth floor landing was open? Answer 'yes' or 'no.'

"Answer: No.

"Special Issue No. 3:

"Do you find from a preponderance of the evidence that on November 9, 1954, Mrs. Chance fell as she left the elevator on the eighth floor landing? Answer 'yes' or 'no.'

"Answer: Yes.

"If you have answered the foregoing question 'yes,' then you will answer the next question; otherwise, you need not answer it.

"Special Issue No. 4:

"Do you find from a preponderance of the evidence that on the occasion in question the employees of the Scarbrough defendants caused wax to remain on the floor near the elevator door on the eighth floor landing? Answer 'yes' or 'no.'

"Answer: No.

"Special Issue No. 9:

"Do you find from a preponderance of the evidence that at the time Mrs. Chance started to leave the elevator in question the elevator operator caused the elevator to jerk upward? Answer 'yes' or 'no.'

"Answer: No.

"Special Issue No. 12:

"Was the fall of Mrs. Chance, if any, the result of an unavoidable accident? Answer 'yes' or 'no.'

"Answer: No.

"Special Issue No. 13:

"What sum of money, if any, if paid now in cash, do you find, from a preponderance of the evidence, will fairly and reasonably compensate plaintiffs for Mrs. Chance's injuries, directly and proximately caused by the fall, if any, sustained by her on November 9, 1954. Answer by stating the amount, if any, in dollars and cents.

"Answer: $1,278.89."

All issues not set out supra were conditionally submitted and were not answered.

A judgment that appellants take nothing against appellees was rendered on the jury's verdict.

Appellants complain that they were denied the right to poll the jury as shown by their bill of exceptions.

Except for its formal parts and the signature of attorneys and the trial judge this bill of exceptions and the trial court's qualification is:

"Be it remembered that upon the trial of the above entitled and numbered cause from June 11, 1956 to June 15, 1956, on said 15th day of June, 1956, after the jury returned its verdict into open court, and the Court had received such verdict and handed the verdict to the Clerk to be read, the Clerk proceeded to read the verdict in open court in the presence of the jury and attorneys for the parties respectively. Thereupon the Court asked the jury as a whole if such was their verdict and the verdict of each of them, and each of the jurors in unison said 'yes' and affirmed said verdict. Thereupon the Court paused and then told the jury they were discharged and had performed their important duty of citizenship, and thanked the jury for their attendance. As soon as the Court completed his remarks to the jury, the attorney for plaintiff rose and asked that the jury be polled.

"At said time when said request for polling the jury was made, the judge had just finished his remarks to the jury, and was still on the bench, all of the jurors were still in their seats in the jury box, plaintiffs and their counsel were in attendance on the

Court, one of the attorneys for the defendants and the cross defendant, respectively, were in attendance on the Court, and the Clerk of the Court was present in the court room with the verdict, and it had not been recorded.

"The Court refused to permit the polling of the jury and overruled plaintiffs' request that the jury be polled on the ground that the court had formally discharged the jury, and that the jury was no longer the jury in the case, and that the Court no longer had control of the jury, and that the request came too late; to which ruling of the Court refusing the request of plaintiffs to poll the jury, the plaintiffs, and each of them, then and there in open court excepted; and asked that this their Bill of Exceptions No. 2 be allowed and filed.

\* \* \* \* \* \*

"The foregoing Bill of Exception No. 2, having been reduced to writing by the attorneys for said plaintiffs and having been presented to the undersigned Judge of said Court for allowance and signature within the proper time required by law, and having been by me submitted to adverse counsel with the qualifications noted and found by him to be correct with said qualifications, and having been by me found to be correct with said qualifications, is hereby allowed, approved and ordered filed by the Clerk of this Court as part of the record in such cause, this 19th day of November, 1956, with the following qualification:

"Upon the occasion of the receipt of the verdict by the Court, and after the reading of the verdict, the Court addressed the jury as a whole, asking:

"'Ladies and gentlemen of the jury, is this your verdict?'

"Each of the jurors in unison said 'Yes' and affirmed said verdict. The Court then paused for a time ample and sufficient for the making of a request for the poll of the jury and then again addressed the jury as a whole, asking:

"'So say you each and all?'

"Each of the jurors again answered 'Yes' in unison, and the Court again paused for a sufficient period for counsel to have requested a poll of the jury. No request was made, and the Court therefore announced to the jury:

"'Then your verdict will be received and you are discharged from your service as jurors.'

"The Court then proceeded to thank the former jurors for their attendance and for their performance of an important duty of citizenship. As soon as the Court had completed these remarks, the attorney for plaintiffs requested a poll of the jury. \* \* \*"

Rule 294, Texas Rules of Civil Procedure, provides that:

"Either party shall have the right to have the jury polled. When a jury is polled, this is done by reading once to the jury collectively the general verdict, or the special issues and answers thereto consecutively, and then calling the name of each juror separately and asking him if it is his verdict. If any juror answer in the negative, the jury shall be retired for further deliberation."

The source of the above rule is Article 2206, which we quote:

"Either party shall have the right to have the jury polled, which is done by calling separately the name of each juror and asking him if it is his verdict. If any juror answer in the negative, the jury shall be retired for further deliberation."

The wording of the rule is slightly different from that of the statute. The rule makes more specific the manner of making

the poll but without express limitation or qualification of the right of either party to poll the jury and does not specifically fix the time when the request must be made.

■■■ The majority is of the opinion that the record plainly shows appellant was given a fair opportunity to request a poll of the jury after the court had indicated the verdict was acceptable and before the jury was discharged and that we should not concern ourselves with the authority of the Trial Court to reconvene the jury and give appellant a second opportunity to request a poll.

We are not to be understood as approving the manner of the submission of this cause as shown by the record before us.

■■ Issue 1 supra inquired whether the elevator was equipped with a device "to prevent moving said elevator." Art. 6145a, Vernon's Ann.Civ.St., provides the elevator shall be equipped with a device "that will prevent moving said elevator." The statute further provides that if the design of such device as is installed has been approved by either of the agencies therein named then it "shall be prima facie evidence of a compliance with this Act." Then the answer "No" to Issue 1, supra, is not necessarily conclusive of the issue as to whether the elevator did in fact move.

It is not disputed that Mrs. Chance stepped through an open door of the elevator; that she fell and that she was injured. She testified how she fell and the cause of her fall. The jury found her fall was not an unavoidable accident.

■■ Referring to Issue 4, supra, which assumes wax was on the floor, even if it be assumed that there is no dispute as to wax being on the floor and that therefore the only issue to be determined is whether appellees were negligent in not removing it prior to the fall then Issue 4 as submitted is not sufficient for that purpose because if it was removed at any time prior to the

trial the jury could conclude that the wax was not "caused to remain on the floor" by appellees' employees.

Appellants presented various objections to the charge and we must briefly notice the other points made by appellant in order to determine if there is any reversible error.

Points one and two are that the Court erred in refusing to submit to the jury requested special issues: (1) as to whether after the door of the 8th floor opened, the elevator moved (2) as to the slippery condition of the 8th floor landing, where appellant fell.

■■ These requested issues, five in number, were included in three pages of requested issues containing eighteen special issues. They were not separately requested. They were requested en masse. This was improper. Walton v. West Texas Utilities Company, Tex.Civ.App. Eastland, 161 S.W.2d 518, writ ref., w. o. m.; Texas General Indemnity Co. v. McNeill, Tex.Civ. App. Beaumont, 261 S.W.2d 378. See also Edwards v. Gifford, 137 Tex. 559, 155 S.W. 2d 786.

■■ The remaining point is that the indicated·answer of the jury to the following issue was "contrary to the undisputed testimony":

"Do you find from a preponderance of the evidence that on November 9, 1954, the defendants failed to equip the elevator in question with a device to prevent moving said elevator while the door on the eighth floor landing was open?"

Answer: "No."

Mr. Franklin Peterson, a zone service superintendent for Otis Elevator Company, testified regarding the Scarbrough elevator:

"Q. All right. Is there or not a device or mechanism that will prevent

the operation of the elevators with the car doors open? A. Yes, there is. There is a safety circuit, sir, to prevent that."

This evidence of Mr. Peterson was undisputed.

There is evidence that this device did not function properly in that appellant testified that after the elevator stopped and as she was stepping off the elevator jerked upward and this in conjunction with her foot striking a foreign substance on the floor caused her to fall. The jury, however, found that the operator did not cause the elevator to jerk as she stepped off. This finding was fully supported by the evidence and as no other issues on this feature of the case were submitted we do not understand how the answer to the issue about the safety device, even if erroneous, has any significance.

The judgment of the Trial Court is affirmed.

Affirmed.

GRAY, J., dissented.

I respectfully dissent from the majority holding.

The exact question here presented does not appear to have been before the appellate courts of this State however the right to have the jury polled has been decided in the cases later noticed.

The trial court's qualification of the bill of exceptions points out the fact that appellants' request that the jury be polled was made after his formal announcement to the jury that it was discharged from further service. Neither the statute nor the rule provide that the request must be made before the announcement that the jury is discharged. There is no contention that the jury had dispersed or had left the jury box. The fact that the trial court asked the jury, "Is this your verdict?" and each of the jurors in unison said "Yes" was only a determination by the court that no juror dissented as provided by Rule 293, Texas Rules of Civil Procedure.

In 1857, in Hancock v. Winans, 20 Tex. 320, 325, Judge Wheeler considered the right of parties to have a jury polled when by consent of the parties the jury had returned a sealed verdict to the clerk in recess, although not formally discharged, had dispersed and afterwards had come into court to have their verdict published. He stated the question to be whether:

"it is the right of a party to have them polled to ascertain, not whether it was their verdict when sealed and returned to the clerk, but whether they are still of the same mind. This, it is conceived, is a very different question from that of the right to poll the jury when their verdict is returned by them into court without their having been permitted to disperse."

Judge Wheeler cited authorities and noted that in some States the practice of polling juries was not permitted while in others if not in most of them the practice obtained:

"and I apprehend it is there generally recognized as a matter of right. It is believed to have been generally so treated in practice in this state, at least in criminal cases, although the point has not been authoritatively determined."

In Leverett v. St. Louis, S. F. & T. Ry. Co., Tex.Civ.App., 266 S.W. 589, er. dis., it was held to be error to deny a request for a poll of the jury in the manner provided by statute. In Wells v. Lone Star S. S. Co., Tex.Civ.App., 1 S.W.2d 925, er. ref., it was held that the right to poll the jury is a matter of right to the parties to the suit and is not one resting wholly in the discretion of the trial court. It was there held that it was reversible error to deny a timely request for such a poll. In Watchtower Mut. Life Ins. Co. v. Davis, Tex.Civ.App.,

99 S.W.2d 693, 695, no writ history, counsel made a motion, prior to the discharge of the jury, that the jury be polled. This motion was overruled and the jury was told to go home and report to the central jury room the next morning however it appears the jury was discharged. The next morning the jury was brought into court and polled. The court discussed Art. 2206, supra, and its predecessor Art. 1979 and as to the poll conducted the morning after the jury was discharged concluded that the poll should be taken within a reasonable time after the request but while the jury was still empaneled in the case. In holding that the trial court erred in denying the request (made prior to jury's discharge) the court said:

"Regardless of the motive that prompts a party to request the polling of the jury, he is entitled to have it done. The trial court has no discretion in granting the request. There is no requirement that a reason for such request shall be given. A party is entitled to know definitely that each juror assents to the verdict as returned. It has been held that 'unanimity of the verdict, freely assented to, is the principle involved.' Hancock v. Winans, 20 Tex. 320; Leverett v. St. Louis, S. F. & T. R. Co., Tex.Civ.App., 266 S.W. 589 (writ of error dismissed); Wells v. Lone Star S. S. Co., Tex.Civ.App., 1 S.W.2d 925, 927 (writ refused); Boyer v. Maloney, 27 Ohio App. 52, 160 N.E. 740; Lipscomb v. Cox, 195 N.C. 502, 142 S.E. 779."

The Supreme Court having adopted Rule 294 supra without incorporating any language evidencing any intent that it should be construed in a manner different from the construction placed by the courts on its source, Art. 2206, supra, I think such prior decisions are controlling and that polling the jury is a matter of right to the parties to the suit and that it is reversible error for the trial court to refuse a timely request made for that purpose.

Concededly at the time that appellants' request was made the jury was still in the jury box and there was no occasion to reassemble the jury.

The right of a trial court to reassemble a jury after discharge for the purpose of amending a verdict has been before the appellate courts of this State. The authority to amend a verdict is now given by Rule 295, Texas Rules of Civil Procedure, the source of which Rule is Art. 2207.

In Sigal v. Miller, Tex.Civ.App., 25 S.W. 1012, 1013, the action of the trial court was approved when he recalled a jury "while the most of them were still in the court room" resubmitted the cause to them and requested that they compare the description of lots as contained in plaintiffs' petition with the description of said lots as contained in their verdict.

In Kansas City, M. & O. Ry. Co. v. Treadwell & Wilkison, Tex.Civ.App., 164 S.W. 1089, er. ref., the verdict was received, the jury had been discharged and had retired from the courtroom. In about ten minutes the jurors were brought into the courtroom and were instructed to retire and correct their verdict. It was held error was not committed. Again in El Paso Electric Co. v. De Garcia, Tex.Civ.App., 10 S.W.2d 426, a jury was recalled and retired to examine their verdict and requested to advise the court whether the verdict was the one they wished to render. This action was held proper. However it is now held that a trial court has no authority to reassemble a jury after it "has been discharged and its members have separated." Burchfield v. Tanner, 142 Tex. 404, 178 S.W.2d 681, 683. The court there cites and quotes from Caylat v. Houston, E. & W. T. Ry. Co., 113 Tex. 131, 252 S.W. 478, 483, wherein the court supported its holding with the statement:

"The only consideration of public policy involved in denying a correction in a clear case of clerical mistake is the expense and delay incident to a new

trial. We regard this consideration of minor importance when contrasted with the innumerable evils which would inevitably follow in the wake of a rule of procedure which would beget the hope of obtaining a final adjudication of the rights of the parties upon a verdict established by the testimony of jurors after they had been discharged from their official duties, had separated, and had been afforded the opportunity freely to converse with the interested parties, their counsel, and their friends. We are clearly of the view that the safer and more salutary rule is to deny a correction in such cases, and to order a new trial as the full measure of relief against the mistake."

Numerous annotations relating to the question are found in 66 A.L.R. at page 536 et seq.

Although the cases last cited, supra, pertain to a different rule and statute from the rule considered here they are authority for the statement that it appears that a trial court has jurisdiction over a jury for the purpose of amending or correcting its verdict until the jury has been discharged and its members have separated. Such rule is applicable to the facts here. Since the decision in Hancock v. Winans, supra, that the parties may poll the jury as a matter of right a century has passed and, so far as we have been able to determine, no appellate court in Texas has held to the contrary. This fact together with the further fact established by the Caylat case and other decisions, supra, that a trial court may exercise control over a jury until it has been discharged and the jurors have separated are such long established rules that: "Courts should be very slow to overturn the rules long established for the protection of litigants * * *." Commercial Standard Ins. Co. v. Miller, Tex.Com.App., 48 S.W.2d 618, 621. Quoted with approval in Burchfield v. Tanner, supra.

I attach no importance to the fact that, as shown by the qualification of the bill of exceptions, twice in the proceedings the trial court paused for a sufficient time for a request for a poll of the jury to be made. There was nothing to suggest to counsel whether the pause was for the benefit of the jury or for some other purpose. The purpose was known only to the trial court. Indeed if counsel had made his request during either pause it might just as well be argued that he interrupted the proceeding then in progress.

Moreover the right of the parties to poll the jury is given by Rule 294. Its object is "to obtain a just, fair, equitable and impartial adjudication of the rights of litigants." Rule 1. Smirl v. Globe Laboratories, 144 Tex. 41, 188 S.W.2d 676. Here appellant was denied the right to determine that the jury's verdict was "freely assented to" and for which reason I would reverse the judgment of the trial court and remand the cause.