B-R DREDGING COMPANY, Petitioner,

v.

Feliciano RODRIGUEZ, Respondent.

No. B-6966.

Supreme Court of Texas.

April 12, 1978.

Rehearing Denied May 17, 1978.

**694**

Dyer, Redford, Burnett, Wray & Woolsey, James W. Wray, Jr., and S. Eldon Dyer, Corpus Christi, for petitioner.

William R. Edwards, Hubert L. Stone, Corpus Christi, for respondent.

SAM D. JOHNSON, Justice.

Feliciano Rodriguez brought suit as a seaman under the Jones Act, United States Code, Title 46, Section 688, and under general maritime law for personal injuries sustained when he fell through an open hatch on the deck of the tender boat, *Burley Koen*. He sued his employer, B–R Dredging Company, basing his cause of action upon negligence and unseaworthiness of a vessel and negligence and unseaworthiness per se for the violation of alleged statutory duties imposed by the Corps of Engineers Safety Manual. Based on jury answers to special issues, the trial court held that B–R Dredging was negligent and provided an unseaworthy vessel. Rodriguez was awarded damages which were reduced from $150,-000 to $55,388.02 in accordance with the comparative fault provisions of the Jones Act and the jury finding that Rodriguez was fifty-five percent contributorily negligent. The court of civil appeals reversed the damages award and rendered judgment for Rodriguez in the full amount of $150,-000. The court of civil appeals held that the Jones Act incorporated the provisions of the Federal Employers' Liability Act, United States Code, Title 45, Section 51, *et seq.* (hereinafter referred to as FELA), and that Section 53 of the FELA precluded the reduction of damages for contributory negligence if there has been a violation of any statute enacted for the safety of employees. 552 S.W.2d 601. This court reverses the court of civil appeals and affirms the trial court judgment.

B–R Dredging was a subcontractor under a prime contract between T. J. James and Company, Inc. and the U.S. Army Corps of Engineers which provided for the dredging of the Corpus Christi ship channel area. Rodriguez was employed by B–R Dredging as captain of the *George Pospisil*, one of several tender boats working as support vessels to the dredge, *Bill Bauer*.

On the day of the injury Rodriguez and his deckhand, Domingo Reyna, were working the twelve midnight to twelve noon shift. Just prior to dawn, they were preparing to go ashore to pick up the day crew when the *George Pospisil* would not start. They began a search for jumper cables, looking on the dredge and in the other tender boats. Rodriguez was injured while searching a sister tender boat, the *Burley Koen*. As he searched the deck area of the *Burley Koen*, he used only a flashlight and did not turn on the deck lights. On reaching the stern, Rodriguez stepped into an open hatch on the starboard side of the deck, whereupon he suffered injuries to his back and legs. It is undisputed that the hatch or manhole was completely uncovered and unguarded.

Both the trial court and the court of civil appeals have held that the failure to cover the hatch constituted negligence on the part of B–R Dredging and made the *Burley Koen* unseaworthy. However, the trial court further found that Rodriguez was fif-

ty-five percent contributorily negligent in failing to turn on the deck lights of the *Burley Koen* and adhered to the comparative fault provisions of the Jones Act, reducing Rodriguez's damages by his degree of contributory fault. The court of civil appeals, however, held that the Jones Act incorporated provisions of the FELA by extending to seamen all the rights and remedies provided to railroad workers under the FELA. Section 53 of the FELA provides in part as follows:

"That no such employee [of a common carrier by railroad] who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of *any statute enacted for the safety of employees* contributed to the injury or death of such employee." [Emphasis added.]

The court of civil appeals further held that a violation of a safety statute had occurred in the instant case because the failure to cover the hatch was a violation of provisions in the Corps of Engineers Safety Manual which state that all deck openings should be guarded. The court of civil appeals, therefore, held that comparative fault should not constitute an offset of damages in the instant case; accordingly, the court reinstated the full award of damages to Rodriguez in the amount of $150,-000.

B–R Dredging takes issue with the court of civil appeals judgment on two grounds: (1) the holding that the Corps of Engineers Safety Manual constitutes a safety statute; and (2) the determination that Section 53 of the FELA governed the damages award in the instant case. This court makes no holding relative to the second ground; we make no determination on the applicability of Section 53 of the FELA to causes of action under the Jones Act. If applicable, Section 53 would only be operative when there has been a violation of a safety statute. This court finds that no such violation of a safety statute has occurred in the instant case.

The court of civil appeals held that the Corps of Engineers Safety Manual had the force and effect of a safety statute based upon its determination that the Safety Manual was adopted by reference in the Armed Services Procurement Regulations, *Code of Federal Regulations*, Title 32, Section 7–000, *et seq.*, and was consequently incorporated in the contracts between the parties herein. The Armed Services Procurement Regulations were promulgated by the Secretary of Defense pursuant to the United States Code, Title 10, Section 2202, to develop a series of uniform contract provisions to be used in government contracts for supplies or services. The court of civil appeals noted that these Regulations have been consistently recognized as having the full force and effect of law. *Paul v. United States*, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); *California Comm'n v. United States*, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); *G. L. Christian and Associates v. United States*, 160 Ct.Cl. 58, 320 F.2d 345 (1963). Section 7–602.42 of these Regulations specifically adopts the Corps of Engineers Safety Manual in the "accident prevention" provision as follows:

"*Accident Prevention.*

"(a) Normally, the following clause concerning safety controls, records, reports and corrective action to be taken shall be inserted.

"ACCIDENT PREVENTION (1967 JUN)

"(a) In order to provide safety controls for protection to the life and health of employees and other persons; for prevention of damage to property, materials, supplies, and equipment; and for avoidance of work interruptions in the performance of this contract, the Contractor shall comply with all pertinent provisions of Corps of Engineers Manual, EM 385–1–1, dated 1 March 1967, entitled 'General Safety Requirements', as amended, and will also take or cause to be taken such additional measures as the Contracting Officer may determine to be reasonably necessary for the purpose.

". . . .

"(d) Compliance with the provisions of this article by subcontractors will be the responsibility of the Contractor."

The contract between T. J. James and Company, Inc. and the U.S. Army Corps of Engineers contained this accident prevention provision as paragraph 49 therein. Furthermore, T. J. James provided for B–R Dredging's compliance with the accident prevention provisions in Article 19 and Article 22 of the subcontract.

The court of civil appeals did not hold, nor does Rodriguez urge, that the Safety Manual has statutory effect in and of itself. Rather, the statutory status of the Safety Manual is predicated solely on the fact that it is incorporated by reference in the Armed Services Procurement Regulations which have the full force and effect of law. The courts have generally recognized the right to incorporate by reference in one statute the provisions of *another statute or law.* *Engel v. Davenport,* 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813 (1926). However, the courts have not held that adoption by reference confers statutory status upon a rule which did not have the force and effect of law prior to such adoption.

It has been held that the Corps of Engineers Safety Manual in and of itself does not have the force of law. In *Quinn v. United States,* 312 F.Supp. 999 (E.D.Ark. 1970), *aff'd,* 439 F.2d 335 (8th Cir. 1971), the court refused to hold that the Corps of Engineers' violation of its own Safety Manual constituted negligence per se as the regulations did not have the force of law. In *Quinn* the court relied upon that body of cases wherein parties, to establish negligence or contributory negligence, have attempted to introduce into evidence codes or safety manuals issued by governmental bodies. The majority of courts have ruled such codes inadmissible because they do not have the force of law and represent only the views of their compilers which are subject to conflicting views. Such cases include *Mississippi Power & Light Co. v. Whitescarver,* 68 F.2d 928 (5th Cir. 1934), involving the National Electric Safety Code, and *Manhat v. United States,* 220 F.2d 143 (2d Cir. 1955), involving a Coast Guard

manual for seamen. *See also* Annot., 75 A.L.R.2d 778.

Furthermore, a holding that the Corps of Engineers Safety Manual does not have statutory status is supported by general administrative law and rules of statutory construction. Generally, administrative regulations only have the full force and effect of law when: (1) a statute exists which specifically authorizes the issuance of rules and regulations by the agency; (2) the rule or regulation adopted is within the authority of the agency; and (3) the rule or regulation is adopted according to the procedure prescribed by statute. 1A Sands, Sutherland Statutory Construction § 31.02. The Corps of Engineers Safety Manual fails to meet these criteria. Most significantly, the Safety Manual has not been adopted according to the procedure prescribed by statute. The Federal Administrative Procedure Act, United States Code, Title 5, Section 551, *et seq.,* establishes the proper procedure. The Act requires that any regulations or "substantive rules of general applicability adopted as authorized by law" shall be published in the *Federal Register.* 5 U.S.C. § 552(a)(1)(D). Further, in the Act creating the *Federal Register* Congress specifically required that documents having "general applicability and *legal effect* " be published in the *Register.* 44 U.S.C. § 1505(a). Notably, the Act exempted from publication those documents "not having general applicability and legal effect or [those] effective only against Federal agencies . . . ." The Corps of Engineers Safety Manual has not been published in the *Federal Register* nor is it published in the *Code of Federal Regulations.* Accordingly, the Safety Manual has not been published in accordance with the adoption procedure prescribed by statute.

Therefore, the Corps of Engineers Safety Manual in and of itself does not have the full force and effect of law; it follows that such Safety Manual, not having independent statutory effect, is not elevated to the status of a statute by incorporation by ref-

erence in the Armed Services Procurement Regulations. Accordingly, we hold that the instant violation of the Corps of Engineers Safety Manual is not a violation of a statute for the safety of employees. The court of civil appeals erred in finding a statutory violation and consequently erred in applying FELA, Section 53. The trial court properly applied the provisions of the Jones Act and reduced Rodriguez's damages by his percentage of contributory fault.

This court has considered the points raised in the application for writ of error filed by Rodriguez. He asserts that the trial court erred in sustaining special exceptions to his pleadings concerning the inadequate lighting on the *Burley Koen*. He argues that although such ruling may not constitute error as to liability, it does create error in calculating damages based on comparative fault standards. He argues that in the event this court upholds the application of comparative negligence, the case should be remanded, rather than rendered. We find no merit in these points and uphold the court of civil appeals' determination that if there was error, it was harmless under Rule 434, Texas Rules of Civil Procedure.

Accordingly, this court reverses the judgment of the court of civil appeals and affirms the judgment of the trial court which awards Rodriguez damages in the amount of $55,388.02.