**Tommy PATE, et ux., Appellants,**

v.

**TEXLINE FEED MILLS, INC., Appellee.**

No. 07–83–0098–CV.

Court of Appeals of Texas, Amarillo.

Feb. 15, 1985.

Rehearing Denied March 29, 1985.

Templeton & Garner, Robert E. Garner, John Smithee and Robert L. Templeton, Amarillo, for appellants.

Underwood, Wilson, Berry, Stein & Johnson, John Mozola and Kelly Utsinger, Amarillo, Richards & Ferguson, Floyd H. Richards, Dalhart, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

DODSON, Justice.

Tommy Pate and his wife, Jerry, appeal from a take-nothing judgment rendered by the trial court on the jury's verdict on their personal injury action against Texline Feed Mills, Inc. By seven points of error, the appellants claim the trial court committed reversible error by refusing to render judgment for them on an alleged oral verdict, rather than the jury's written verdict presented in open court; by accepting an ambiguous, unclear, or incomplete jury verdict; by misreading and making verbal comments on a portion of the court's charge; and, by refusing to permit them to present evidence of acceptable standards of care in the industry which were allegedly violated by Texline. Concluding that appellants' points of error and contentions made thereunder do not present cause for disturbing the judgment, we affirm.

As an independent welding contractor, Tommy Pate was engaged to perform certain welding work at a grain storage facility owned by Texline. At approximately 1:15 p.m. on 16 May 1979, Pate returned from lunch to begin work on a bin at the grain storage facility. At that time, Pate noticed that a piece of his equipment was missing from the immediate worksite. He went into the facility to locate the missing equipment. Shortly thereafter, a fire started in the facility. As a result of the fire, Pate received severe burns on the upper part of his body, including his chest, back, arms, hands, and face.

The record shows that the case was submitted to the jury on twenty-one special issues numbered 1, 1A, 2, 2A, 2B, 2C, 3, 3A, 4, 4A, 5, 5A, 6, 6A, 7, 7A, 8, 9, 10, 11, and 12. The jury answered all of the issues, except issues numbered 7A, 9 and 12. Those three issues were conditionally submitted and by its answers to the respective predicating issues, the jury was not required to answer those three issues. The jury's answer to each issue was recorded in writing by the foreman in the answer space provided in the court's charge.

By its written answers to the special issues, the jury determined: that Texline failed to render the premises in question reasonably safe for Tommy Pate; but, that such failure was not a proximate cause of the occurrence in question; that Texline failed to warn Pate of any danger on the premises; that the dangerous conditions on the premises were known by Texline; that the dangerous conditions on the premises should have been discovered by Texline; but, that none of the three preceeding matters were a proximate cause of the occurrence in question; that Texline failed to properly maintain the electrical motors, apparatuses, "and/or" wiring; and that such failure was not a proximate cause of the occurrence in question.

The jury further found that Texline failed to properly inspect the electrical motors, apparatuses "and/or" wiring; but, that such failure was not a proximate cause of the occurrence in question; that Texline failed to provide proper fire prevention equipment at the facility; but, that such failure was not a proximate cause of the occurrence in question; that the foregoing failures of Texline were a "heedless and reckless disregard of the rights of others"; but, that such action was not a proximate cause of the occurrence in question; and that Pate was not negligent on the occasion in question. To the various items of damages, the jury found a total sum of $609,000.

All of the jury's answers to the special issues were unanimous, except its answer to special issue number 1A. That special issue, and its predicating issue with the jury's answers thereto read:

## SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Texline Feed Mills, Inc. failed to render the premises in question reasonably safe for Tommy Pate?

Answer "Yes" or "No", as you may find.

ANSWER: <u>Yes</u>

If you have answered the above and foregoing Special Issue No. 1 "Yes", then answer the following Special Issue;

other [sic] do not answer the following Special Issue.

### SPECIAL ISSUE NO. 1A

Do you find that such failure was a proximate cause of the occurrence in question?

Answer "Yes" or "No", as you may find.

ANSWER: <u>1-yes</u>
<u>11-no</u>

Since the jury's verdict was not unanimous, the eleven jurors that answered "no" on special issue number 1A signed the verdict.

The written verdict signed by the assenting eleven jurors was returned in open court with all jurors present, reviewed and accepted by the court. However, the court, rather than the clerk, read the jury's written verdict. When reading the written verdict, he misstated the jury's answer to special issue number 1A (*i.e.*, he stated the jury's answer as "yes," rather than one "yes" and eleven "no"). A few minutes after the court had discharged the jury and its members had separated and disbursed, the court realized that he had misread the written answer to special issue number 1A, and he informed Pate's attorney.

By their first point of error, the appellants claim the trial court erred by refusing to render judgment for them on the verdict as read by the judge in open court, rather than the written jury verdict signed by eleven jurors and returned in open court. We disagree.

The record shows:

THE COURT: All right. Would the foreman please stand and state your name for the record?

JURY FOREMAN: Robert Hopson.

THE COURT: All right. Mr. Hopson, has the jury reached a verdict in the Pate versus Texline Feed Mills case?

JURY FOREMAN: Yes, we have.

THE COURT: And have you—have you, as foreman, signed in—filled in all the answers of the jury to the verdict as rendered by the—by the jury? Have you filled in all the answers that are required to be answered under the jury verdict?

JURY FOREMAN: Yes, sir.

THE COURT: And have you signed the—have you signed—is it—is it a unanimous verdict? Let me ask you that first.

JURY FOREMAN: No, sir.

THE COURT: All right. Is it—is it ten to two or eleven to one?

JURY FOREMAN: Eleven to one.

THE COURT: All right. For the eleven people who all joined in the verdict, did all of the eleven of them sign the verdict form?

JURY FOREMAN: Yes, sir.

THE COURT: And did all eleven of those say that they agreed to every answer that's—that you filled in?

JURY FOREMAN: Yes, sir.

THE COURT: All right. Would you hand the verdict to the Sheriff and be seated?

THE COURT: All right. At this time, I'm going to read the answers only to the verdict that's been filled in. Let me check and make sure all eleven have signed on it.

&ast; &ast; &ast; &ast; &ast; &ast;

(Thereupon the Court examined the verdict form.

THE COURT: There are eleven signatures. I'm going to read the number and the answer of the jury for the attorneys to fill in. Then I'm going to ask the eleven of you who joined in this, I need to get you to listen carefully so that you can tell me, by raising your hands, whether each answer that I've read is your verdict. If there's any of them that you need me to read the special issue questions to be sure, well, then, I'll do that. But try, the best you can, to follow it by number.

Special Issue Number One. Jury verdict, "yes".

Special Issue Number One-A. "Yes".

Special Issue Number Two. "Yes".

Special Issue Two-A. "Yes".

Special Issue Two-B. "Yes".

Special Issue Two-C. "No".

Special Issue Three. "Yes".

Special Issue Number Three-A. "No".

Special Issue Number Four. "Yes".

Special Issue Number Four-A. "No".

Special Issue Number Five. "Yes".

Special Issue Number Five-A. "No".

Special Issue Number Six. "Yes".

Special Issue Number Six-A. "No".

Special Issue Number Seven. "No".

And, under the instruction of the Court, then, Special Issue Number Seven-A was not answered.

Special Issue Number Eight. "No".

Special Issue Number Nine. There's no filling in. Was that conditioned, gentlemen?

MR. MOZOLA: Yes, your Honor.

THE COURT: It was, wasn't it? Yes. All right. So then—that's—under the conditions—let's see. Yes. So you were not required to answer Special Issue Number Nine by the Court's charge.

Special Issue Number Ten. A. "$300,000.00".
B. "$ 25,000.00".
C. "$100,000.00".
D. "$ 10,000.00".
E. "$ 34,000.00".
F. "$ 40,000.00".
G. "$ 50,000.00".

Number Eleven, Special Issue Number Eleven. "$50,000.00"

Special Issue Number Twelve then was not answered under the instructions of the Court.

All right. Now, the jury has heard me read these answers. If you can tell from the answers if this is your verdict, please raise your hand. Raise your hand if it is your verdict.

All right. Thank you. The record will reflect that eleven jurors did raise their hand and eleven have answered—have signed the verdict. If you—I'll ask you to raise your hand again if you—*if your signature is on the jury verdict; if you signed the jury verdict, will you raise your hand again, please?*

*All right. The eleven whose signatures are on the jury verdict have also certified that this is their verdict, so I will accept the verdict and order it filed.* [Emphasis added.]

Even though the court misread the jury's answer to special issue number 1A, it is obvious from the record that the court accepted and ordered filed the written verdict. Nevertheless, appellants argue that when the court misread the jury's answer to special issue number 1A and the jurors assented to the answer as read by the court, the jury changed its verdict on that issue and that the trial court erred by not rendering judgment for them on the verdict made in open court. Again, we disagree.

At the hearing on appellants' motion for new trial, all twelve jurors in the case testified. That record shows that the jurors did not realize the court had misread the answer to special issue number 1A. None of the jurors had memorized the issues by number. At the time the verdict was read, the jurors simply thought the court had read the issues as shown by the jury's written verdict. The record further shows that at the time the verdict was read in open court, none of the jurors had any intent to change their vote on special issue number 1A and actually did not realize that the court had misread the answer to that issue.

In Texas, the verdict "is a written declaration by a jury of its decision, comprehending the whole or all the issues submitted to the jury." Tex.R.Civ.P. 290. That rule makes it clear that there are no provisions in Texas for oral verdicts. Texas has substituted for the traditional oral report of the foreman the more accurate record which results from a report in writing. In that regard, the jurors testified at the hearing on appellants' motion for new trial, that the jury's last vote on special issue number 1A in the jury deliberation room was one "yes" and eleven "no," that the foreman correctly recorded that vote, and that the written verdict signed by the eleven assenting jurors was the jury's verdict returned in open court.

■ The trial court exercises judicial discretion in examining the verdict of a jury to determine whether or not it is in

proper form and whether the answers made are responsive to the issues. *Anheuser-Busch, Inc. v. Smith,* 539 S.W.2d 234, 238 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ). In that regard, the record shows that the jury's written verdict was returned in open court and handed to the court. At that time, the trial court examined the written verdict, determined that it was the jury's verdict and that it was signed by the eleven assenting jurors. When the trial court has examined the verdict and found it to be in proper order, the court's further action in accepting and directing that the written verdict be filed are purely ministerial acts. *Id.*

■ Consequently, in this instance, the jury's written verdict returned in open court is not destroyed by the trial court's failure to accurately read the written verdict which was accepted and ordered filed by the court. We, therefore, conclude that the trial court did not err by refusing to render judgment for the appellants on the alleged oral jury verdict. We further conclude that any error by the trial court in misreading the jury's written verdict in open court was not such a denial of the rights to the appellants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case. *See* Tex.R.Civ.P. 434. The appellants' first point of error is overruled.

■ Alternative to their first point of error, the appellants, by their third point of error, claim that the trial court's erroneous reading of the jury's verdict in open court deprived them of: (1) their right to have the verdict affirmed in open court; and (2) their right to have the jury polled. We disagree. The record, which is quoted above, affirmatively shows that the jury's written verdict was affirmed in open court before the verdict was read to the jury. Thus, the appellants' first contention under their third point of error is overruled.

We also overrule appellants' contention that the trial court's erroneous reading of the jury's verdict in open court deprived them of their right to have the jury polled. Tex.R.Civ.P. 294 reads:

*Either party shall have the right to have the jury polled.* When a jury is polled, this is done by reading once to the jury collectively the general verdict, or the special issues and answers thereto consecutively, and then calling the name of each juror separately and asking him if it is his verdict. *If any juror answers in the negative when the verdict is returned signed only by the presiding juror as a unanimous verdict, or if any juror shown by his signature to agree to the verdict should answer in the negative, the jury shall be retired for further deliberation.* [Emphasis added.]

■ Even though either party has the right to have the jury polled, that right must be promptly exercised by a request made to the court before the jury is discharged. *Chance v. Scarbrough,* 303 S.W.2d 832, 837 (Tex.Civ.App.—Austin 1957, writ ref'd n.r.e.). *See also Dilbeck v. Ideal Bread Co.,* 562 S.W.2d 563, 565 (Tex.Civ.App.—Texarkana 1978, no writ); *Lewis v. Texas Employers' Ins. Ass'n.,* 151 Tex. 95, 246 S.W.2d 599, 600 (1952); *Great Atlantic & Pacific Tea Co. v. Garner,* 170 S.W.2d 502, 505 (Tex.Civ.App.—Dallas 1943, writ ref'd w.o.m.). Once the request is promptly made before the jury is discharged, the trial court has no discretion but to poll the jury, and the requesting party's motive is immaterial. *Watchtower Mut. Life Ins. Co. v. Davis,* 99 S.W.2d 693, 695 (Tex.Civ.App.—Fort Worth 1936, no writ). However, each party has the implicit duty to promptly examine the written jury verdict and promptly request a jury poll before the jury is discharged so that any clerical error in the verdict may be corrected, or the jury may be retired for further deliberation, if necessary.

■ In this instance, the appellants did not promptly examine the jury's written verdict nor promptly request the court to poll the jury before the jury was discharged. In that regard, the record shows that the appellants had ample time to exercise their duty to examine the written verdict and promptly request the poll before

the jury was discharged. Consequently, the appellants waived their right to have the jury polled. The appellants' third point of error is overruled.

■ By their fourth, fifth and sixth points of error, the appellants maintain that the trial court erred: (1) by rendering a take-nothing judgment because the jury's written verdict is ambiguous, unclear or incomplete; (2) by refusing to grant them a new trial because the jury's written verdict is ambiguous, unclear or incomplete; and (3) by failing to grant their motion for mistrial. Under these points of error, the appellants contend that the jury's written answer to special issue number 1A is ambiguous, unclear or incomplete because the answer reads:

1—yes
11—no

They claim that the answer can be interpreted that "yes" is the first answer and "no" is the second answer; or, one for "yes" and two for "no." Thus, they argue that the verdict is ambiguous, unclear or incomplete.

There is no evidence in the record to support appellants' strained interpretation of the jury's written answer to special issue number 1A. Nor do the appellants point us to any such evidence. As we stated above, all of the jurors testified that the jury's last vote on special number 1A during deliberation in the jury room was one "yes" and eleven "no." The jury foreman testified that he recorded that vote on the issue. Other jurors testified that the foreman correctly recorded the jury's answer to that special issue. That answer was returned in open court, and accepted and ordered filed by the court. The appellants' fourth, fifth and sixth points of error are overruled.

By their second point of error, the appellants claim the trial court erred by improperly reading the court's charge to the jury by failing to read the charge precisely as it was written and by making extraneous statements and comments to the jury concerning the charge. This point of error does not present reversible error.

In the record before us, there is no transcribed record of the court's reading of the charge to the jury. The error complained of is developed from testimony by one of the appellants' attorneys at the hearing on their motion for a new trial. Appellants' attorney testified that in special issue number 1A the phrase, "a proximate cause" was written "approximate cause," that the court corrected the error and verbally stated that the words have totally different meanings and "that everyone knows what the term 'approximate' means, but that 'proximate cause' has a very precise and exact meaning in law."

Concerning the statement allegedly made by the court, the appellants' attorney further stated, "that the statement did not appear to me to be offensive or inappropriate." The attorney candidly admitted that he did not object to the statement at the time it was made "because I thought the Court basically stated pretty fairly what was occurring." However, he claimed, "there were misstatements of that [i.e., the court's statements] made in the jury room."

One of the appellee's attorneys testified that he recalled that the judge stated, "that 'proximate cause' was not the same as 'approximate cause' and that 'proximate cause' had a legal definition which was stated in the Charge." After hearing each party's testimony, the court, in essence, certified that he stated the words have different meanings, that everyone knows what "approximate" means, but that "a proximate cause" had a legal definition which was stated in the charge.

■ Tex.R.Civ.P. 275 reads:
Before the argument is begun, *the judge shall read to the jury, in the precise words in which they were written, his charge* and all requested instructions, special issues, definitions, and explanatory instructions which he may give. [Emphasis added.]

That rule states a procedural, rather than substantive rule of law. *Texas State Highway Department v. Reeves,* 161 S.W.2d

357, 360 (Tex.Civ.App.—Beaumont 1942, writ ref'd.). The rule should be liberally construed "to expedite the disposition of business and to decrease the number of technical reversals." *Id.* It is the policy of the law that the jury shall be correctly instructed. *Bd. of Regents, U. of Tex. v. S & G Const. Co.,* 529 S.W.2d 90, 99 (Tex.Civ. App.—Austin 1975, writ ref'd n.r.e.).

▆▆▆▆▆ We are not persuaded that Rule 275 precludes the court from correcting obvious typographical errors in the charge. In this instance, the appellants made no objection to the court's action in correcting the charge. Therefore, any error by the court in that regard is waived. We further conclude that the court's action in correcting the charge was not "such a denial of the rights of the appellant[s] as was reasonably calculated to cause and probably did cause the rendition of an improper judgment" in this case. *See* Tex.R.Civ.P. 434. The appellants' second point of error is overruled.

▆▆▆ By their seventh point of error, the appellants claim the trial court erred by refusing and failing to permit them to present evidence to the jury concerning standards of care accepted in the industry, bearing upon the duty and care required of Texline, and upon the issue of causation of the accident in question. We disagree.

The record shows that the standards of care which appellants sought to establish were standards set forth in the National Electric Safety Code. In *B–R Dredging Co. v. Rodriguez,* 564 S.W.2d 693, 697 (Tex. 1978), the court determined that a violation of the Corps of Engineers Safety Manual was not a violation of a statute for the safety of employees. In making that determination, the court cited *Quinn v. United States,* 312 F.Supp. 999 (E.D.Ark.1970), *aff'd,* 439 F.2d 335 (8th Cir.1971); *Mississippi Power & Light Co. v. Whitescarver,* 68 F.2d 928 (5th Cir.1934) and tacitly agreed with the majority of courts that have ruled such codes (*i.e.,* the Corps of Engineers Safety Manual and the National Electric Safety Code) inadmissible "because they do not have the force of law and

represent only the views of their compilers which are subject to conflicting views." *B–R Dredging Co. v. Rodriguez,* 564 S.W.2d at 696.

In *Whitescarver,* the court determined that the National Electric Safety Code was inadmissible to establish a standard of care which the power company had allegedly violated when the company constructed its power line. In this instance, since the record shows that the appellants were attempting to establish that Texline was negligent on the occasion in question because it had violated the National Electric Safety Code, we conclude that the trial court did not err by refusing to permit the presentation of that evidence by the appellants. The appellants' seventh point of error is overruled.

In summary, the appellants' seven points of error are overruled, and the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

By their motion for rehearing, the appellants (*i.e.,* the Pates) contend, among other things, that this Court erred by overruling their seventh point of error advanced in their original brief filed in this cause. That point of error reads: "The court erred in refusing and failing to permit Plaintiffs [*i.e.,* the Pates] to present evidence to the jury concerning *standards of care accepted in the industry* and bearing upon the duty and care of the Defendant [*i.e.,* Texline] and the issue of causation of the accident in question" [emphasis added]. On rehearing, the appellants claim this Court erred because "the *evidence excluded* by the trial court is clearly admissible under Texas law, such error was preserved in the trial court, and such error was harmful to Appellants" [emphasis added].

The "standard of care accepted in the industry" that the appellants wanted to introduce was the National Electric Safety Code. That information was developed by Texline on its cross-examination of the appellants' expert witness on a voir dire examination. In concluding that the National

Electric Safety Code was inadmissible, we relied on *B–R Dredging Co. v. Rodriguez*, 564 S.W.2d 693 (Tex.1978) and *Mississippi Power & Light Co. v. Whitescarver*, 68 F.2d 928 (5th Cir.1934). *Whitescarver* presents the majority and prevailing position that the National Electric Safety Code is inadmissible to show negligence. The admissibility view is presented in *City of Dothan v. Hardy*, 237 Ala. 603, 188 So. 264 (1939). The admissibility view from *Hardy* does not enjoy a significant following by courts from jurisdictions other than Alabama.

In *Hardy*, the court pointed out that "medical works and other scientific writings shown to be authority on the subject" are admissible in Alabama to show negligence. Thus, the court concluded that the National Electric Safety Code was admissible, as are any other scientific writings. The court readily acknowledged that its admissibility rule was not the prevailing view. *Id.* at 266. We point out that since the early case of *St. Louis, A. & T. Ry. Co. v. Jones*, 14 S.W. 309, 310 (Tex.1890), medical treatises and other similar scientific writings are not admissible in Texas to show negligence. Thus, the rationale for the decision in *Hardy* does not prevail in Texas. Consequently, we continue our reliance on *Rodriguez* and *Whitescarver* and adhere to our initial disposition of the appellants' seventh point of error. Nevertheless, for other reasons that point of error must be overruled.

 In their brief, the appellants claim the trial court erred by excluding the evidence which appears at pages 536 through 544 of the statement of facts. We have carefully reviewed the testimony. By that testimony, appellants' witness stated that there are different classifications for different occupancies; that the facility in question falls under Class Two; that equipment is manufactured for various classifications of occupancy; that the label on a particular piece of equipment reveals the classification for which the equipment is approved; and that the equipment in the facility in question did not meet the provi-

sion for a Class Two occupancy. The witness further stated that the standards were generally accepted in the industry and that those standards were from the National Electric Safety Code.

The record shows that there was considerable testimony at the trial concerning the conditions on the premises in question and the "electrical motors, apparatuses, and/or wiring" at the facility. In response to special issues numbered one, two, two-A, two-B, three, and four, the jury found that: Texline failed to render the premises in question reasonably safe for Tommy Pate; Texline failed to warn Pate of any dangers on the premises; the dangerous conditions on the premises were known to and should have been discovered by Texline; Texline failed to properly maintain the "electrical motors, apparatuses and/or wiring" at the facility; and Texline failed to properly *inspect* the "electrical motors, apparatuses and/or wiring" at the facility. However, the jury failed to find that any of those matters was a proximate cause of the occurrence in question. In this Court, those determinations are not challenged by evidentiary points of error.

Consequently, when we consider the excluded evidence in the light of the jury's unchallenged determinations and the other evidence in the record, we must conclude that the trial court's refusal to admit the excluded testimony did not amount "to such a denial of the rights of the appellant[s] as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." *See* Tex.R.Civ.P. 434. The appellants' motion for rehearing is overruled.