**Lynn S. CRAWFORD, Appellant,**

v.

**The STANDARD FIRE INSURANCE COMPANY, Appellee.**

No. 09–88–099 CV.

Court of Appeals of Texas, Beaumont.

Oct. 26, 1989.

Rehearing Denied Nov. 8, 1989.

David Dies, Orange, for appellant.

Michael Reviere, Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appeal from verdict and judgment in worker's compensation case. Appellant, Lynn Crawford, made no objections to the charge of the court. From the record, it appears that no issue was requested on "just and fair" to determine the issue of weekly wage rate.

The jury, upon conflicting and inconsistent evidence, found that the Appellant received an injury on or about November 15, 1985, in the course of her employment. When asked if that injury was a producing cause of any total incapacity, the jury answered "No". When asked if that injury was a producing cause of any partial incapacity, the jury answered "Yes". The beginning date of such partial incapacity, as found by the jury, was November 15, 1985, and the ending date of such partial incapacity was February 22, 1986. The jury also found that the Plaintiff's average weekly earning capacity, during such partial incapacity, was $363.24.

The basic thrust of the appeal, arising from the jury's verdict, is that the jury failed to find from a preponderance of the evidence that Lynn Crawford worked for at least 210 days of the year immediately preceding November 15, 1985, the date of the injury. This jury finding is challenged as being against the overwhelming weight of the evidence. Appellant testified *that she believed* that she had worked the required 210 days; she conceded she was not sure. She is, of course, an interested party and the jury could weigh that factor.

The jury was instructed that it was the sole judge of the credibility of the witnesses and the weight to be given the witnesses' testimony. The jury was further instructed that preponderance of the evidence meant *the greater weight and degree of the credible testimony or evidence before them.* Adhering to these accepted definitions and instructions, we cannot conclude that this particular jury finding was against the overwhelming weight of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); R. Calvert, "'No Evidence' and 'Insufficient Evidence' Points of Error", 38 TEX.L.REV. 361 (1960). We have assiduously adhered to the established standards of review.

The jury also failed to find that there was another employee of the same class as Appellant who worked at least 210 days in the year preceding November 15, 1985, in the same or similar employment and in the same or neighboring place. Appellant stated that Todd Robbins was such other employee. Todd Robbins was not called as a witness although Appellant

knew his whereabouts. Her testimony was based on what she had heard from Todd Robbins. This was hearsay and the court sustained an appropriate objection.

On cross-examination, Appellant was asked if she had personal knowledge that Todd had worked 210 days during the 365 days preceding the injury. She answered: "I don't know how to answer you without going into hearsay." The jury, in judging the weight of the credible evidence, apparently decided that hearsay testimony was not sufficient. Again, the jury is the sole judge of the facts and the weight of the evidence. The trial court simplified the proceeding (involving several objections) by stating in substance to the Appellant: "If you know that only by hearsay, then you don't know it of your own personal knowledge."

■ Another witness on the wage rate issue was presented by Appellant. The witness was a lady business manager at the Laborer's Local in Port Arthur. She had been business manager since July of 1986. She had been secretary of the Local for several years before 1986. She, too, testified that Todd Robbins had worked at the same job for two continuous years. She answered in the affirmative that she was not asked to research any particular people or research her records. The business agent stated that it would be fair to say that she had known quite well many people who had worked in the same or similar employment for at least 210 days. The Appellant had been a past member of that local union. The business agent brought no records and presented no documentation. Upon cross-examination, the agent conceded that she did not have personal knowledge of what Todd Robbins had made during the relevant preceding year on a daily basis. She knew of the union's contract hourly wage. She could not state what the workers made on a daily basis or on a weekly basis.

It appears that both Appellant and her other witness place major reliance on the days worked of Todd Robbins. He was not called as a witness. Appellant knew where he worked at the time of the trial. Again

following the same reasoning and standards of appellate review, we cannot hold that the jury's answers to the wage rate issues were so against the great weight and overwhelming preponderance of the evidence as to be clearly wrong and manifestly unjust. *In re King's Estate, supra.* The "just and fair" issue was not requested by Appellant. It is well-established that "[t]he burden under the statute is upon the plaintiff to establish his wage rate". *Texas Employers' Insurance Association v. Shannon*, 462 S.W.2d 559, 562 (Tex.1970). We overrule the points of error attacking the jury's verdict on the wage rate issues. We cannot do otherwise adhering to *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986).

Appellant attacks the jury's findings of Question 4 and 4C. The jury found in 4 that the injury was a producing cause of partial incapacity and that the plaintiff's average weekly earning capacity during partial incapacity was $363.24 per week. Appellant cites and relies, to some extent, on *Employers Reinsurance Corporation v. Holland*, 347 S.W.2d 605 (Tex.1961). However, in *Employers*, the parties stipulated the average weekly wage of the plaintiff, Baggett, before and at the time of his injury to be $100 per week. We here have no such stipulation. Since the average weekly wage was not established at or before the injury, there is no irreconcilable conflict as Appellant contends.

■ *TEX.R.CIV.P. 273* provides that either party may present to the court and request *written questions* to be given to the jury *and a request by either party for any question shall be made separate and apart from such party's objection to the court's charge. TEX.R.CIV.P. 278* specifically provides that the *failure to submit a question shall not be deemed a ground for reversal of the judgment unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment. Appellant failed in this.* To obtain a judgment it was incumbent upon the Appellant to establish wage rate.

*TEX.REV.CIV.STAT.ANN. art. 8309, sec. 1* (Vernon 1967).

 The Appellant's other challenges are leveled at the jury's finding on Special Issues 3, 3A, 4, 4B and 4C on the basis that there is no evidence to support the jury's findings, that there is insufficient evidence to support the jury's findings, and that the jury's findings are against the overwhelming weight of the evidence. In view of the record before us, we think that we can discuss these points of error in a proper grouping. The landmark, watershed case is *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). In that per curiam opinion, the Supreme Court held that the rule that if there is any evidence of probative force to support the finding of the jury, such finding is conclusive and binding on the appellate court; but such rule applies only *to the question of whether the evidence as a matter of law requires a conclusion contrary to the verdict.* The rule, of course, does not apply where the contention is made that the verdict was so contrary to the overwhelming weight of all the evidence as to be clearly wrong and manifestly unjust. The Supreme Court agreed that it was not simply to describe the intellectual process to be followed by the then Courts of Civil Appeals in passing on fact questions and failed to specify just how a verdict may be supported by evidence of probative force, and at the same time considering all the evidence said verdict was so clearly unjust and manifestly wrong as to require a remand and a resulting new trial. Nevertheless, *TEX. CONST. art. V, sec. 6* (1891, amended 1985) cannot be ignored. And, therefore, it is required of the then Courts of Civil Appeals, upon a proper assignment, or point of error, to consider the fact question of the great weight and preponderance of all the evidence and to order or deny a new trial accordingly, if the verdict is clearly unjust and manifestly wrong. Our task under this record is most difficult.

 *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965), recites the correct standards of appellate review clearly and concisely. If the point of error is that the evidence is legally insufficient; that is, *there is no evidence of probative force to support the finding in question, the standard of review is that the appellate court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary.* If the point of error is that the evidence is factually insufficient to support a finding; that is, the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside, the intermediate court is required to consider all the evidence and all the reasonable inferences therefrom in deciding the factually insufficient point. *See and compare Holley v. Watts*, 629 S.W.2d 694 (Tex.1982).

██ A complainant on appeal, attempting to overcome such adverse jury findings must surmount two obstacles. First, the record must be examined for evidence that supports the jury's findings while ignoring all evidence and inferences to the contrary. If there is no evidence to support the factfinder's answers then, secondly, the entire record must be examined to see if the contrary proposition is established as a matter of law. *Texas & N.O.R. Co. v. Burden*, 146 Tex. 109, 203 S.W.2d 522 (Tex. 1947). We, as an intermediate appellate court, of course, cannot substitute our findings for the findings of the jury. This would be very clear error. *Herbert v. Herbert*, 754 S.W.2d 141 (Tex.1988). We also are bound by *Herbert, supra,* (at page 144), in this:

"... [I]n considering great weight points complaining of a jury's failure to find a fact, courts of appeals should be mindful *that a jury was not convinced by a preponderance of the evidence.* Therefore, in such instances, *courts of appeals are not entitled to reverse merely because they conclude that the evidence preponderates towards an affirmative answer ...*" (Emphasis ours)

This is a third obstacle placed before the Appellant. We have attempted to apply the correct criteria for review as to all the "no evidence" points, "insufficient evidence" (factually insufficient) points, and

"great weight and preponderance" points raised by the Appellant. Following the dictates of the Supreme Court, and the standards of review, we must overrule the same.

■ *We must stress* that if the jury has failed to answer a special question in favor of an Appellant, having the burden of proof on that issue, the verdict will nevertheless be upheld *against a "no evidence" challenge even though there is no evidence to support the jury's negative findings. Ritchey v. Crawford,* 734 S.W.2d 85 (Tex.App. —Houston [1st Dist.] 1987, no writ).

■ Our Supreme Court has acknowledged that an intermediate court has an obligation to review both the factual sufficiency of the evidence points and the great weight and preponderance of the evidence points in regards to a jury's negative answers to a special question. But we must follow certain guidelines. *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986); *M.J. Sheridan & Son v. Seminole Pipeline Co.,* 731 S.W.2d 620 (Tex.App.—Houston [1st Dist.] 1987, no writ). Adhering to *Pool, supra,* in the case of the jury returning a negative answer to a special question on which the Appellant had the burden of proof, the proper standard for review remains a factually insufficient test or a great weight and preponderance of the evidence test. And intermediate courts are directed to exercise their fact jurisdiction solely to avoid a manifestly unjust verdict.

■ We are not at liberty to redetermine the preponderance of of the evidence or to substitute our sole appraisal concerning the greater weight and degree of the credible testimony or evidence. We certainly cannot set aside a jury verdict because the members of the courts of appeals feel a different result is more reasonable, more in accordance with some of the strong evidence or more desirable. Nor do we have a right—except in the most extreme case—to vitiate the Supreme Court's instructions to the jury that the jury members are the sole judges of the credibility of the witnesses and the weight to be given their testimony. Hence, we are constrained to affirm the judgment below.

In *Aetna Insurance Co. v. Giddens,* 476 S.W.2d 664, 665 (Tex.1972), the Supreme Court, in a per curiam opinion, wrote as follows:

"When a workmen's compensation claim is made, the compensation rate cannot be computed until the workman establishes a weekly wage rate in accordance with the requirements of Article 8309. If he has worked at least 210 days in the same or similar employment in the same or neighboring place during the year immediately preceding his injury, his own wages are controlling. This is Subdivision (1) of the statute and is known as step 1. If the injured workman has not himself worked so much in this work and area, he must then take his proof to Subdivision (2) of the statute or step 2, and establish the average weekly wage rate of another employee of the same class who has worked similarly for at least 210 days in the prior year. Subdivision 3 or step 3 provides for a wage rate "just and fair" to both parties, but resort may not be had to the "just and fair" provisions until the workman has borne his burden of proving by competent evidence that his wages cannot be computed under Subdivision (1) or (2). *Texas Employers' Ins. Ass'n v. Shannon,* 462 S.W.2d 559 (Tex.1970); *Texas Employers' Ins. Ass'n v. Ford,* 153 Tex. 470, 271 S.W.2d 397 (1954)."

In *Texas Employers' Insurance Association v. Shannon,* 462 S.W.2d 559 (Tex. 1970), the Court held that the burden was upon the claimant-worker to show by competent evidence that his wages cannot be computed under subsection 1 or 2 before resort can be had to the "just and fair" provisions under subsection 3. In *Shannon, supra,* it is remarkable that the claimant's testimony, under subsection 2, was to the effect that the claimant did not think anybody had worked for a full year; and when asked if anyone he knew had worked in that area in that line of work for 210 days, he stated in substance that he did not know. The Supreme Court held that this was simply not enough to entitle the worker-claimant to resort to subsection 3. *See*

*Texas Employers' Ins. Ass'n v. Ford,* 153 Tex. 470, 271 S.W.2d 397 (1954).

The employee must establish his or her average weekly wages under one of the three statutory methods in order to recover compensation under the Worker's Compensation Act. *Lubbock Ind. School District v. Bradley,* 579 S.W.2d 78, 80–81 (Tex.Civ. App.—Amarillo 1979, writ ref'd n.r.e.). This burden to establish the average weekly wage has become a tricky one and, in practicality, this burden has become imperiled by pitfalls. *See and compare 2 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES* (Workers' Compensation) *PJC 23.01–23.05* (1970), and the comments and cases therein cited. Also, *see and compare 2 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 21.01* (1989), and its subdivisions, including the comment.

Since the decisional law is well established, the Legislature should consider reforming these series of questions to make the submission thereof simpler and more practical and feasible with every day jury trials. The Solons of Texas can properly amend *TEX.REV.CIV.STAT.ANN. art. 8309, sec. 1* (Vernon 1967). Under the present law, the injured worker is placed in a realistic dilemma because he has to prove that he has worked at least 210 days in the year immediately preceding the injury; but if the jury answers in the negative, then the worker has to prove that another employee performed the same or similar work in the same or neighboring place for at least 210 days; if the jury answers "No" to the second question then, and only then, is the "just and fair to both parties" question asked of the jury. Usually the worker has to plead the three alternatives, whether or not he intends to offer proof on all three. But that is not the end of the matter. In numerous cases, the worker will have to undertake to prove that he did not work 210 days *and that there was not another employee in the same or similar employment that worked 210 days.*

In a multitude of cases, the worker was faced with the dilemma of not knowing whether the evidence would preponderate that another worker had worked 210 days or not.

The wage rate issues are not as crucial and dispositive of workers' compensation claims as the issues of an injury in the course of employment issues on whether total or partial incapacity resulted therefrom and for what duration of time the incapacity lasted. Hopefully, the special session of the Texas Legislature called for the middle of November, 1989, which will deal with the Workers' Compensation law, would be an appropriate special session to reform and simplify these troublesome wage rate questions.

The jury's verdict, in Texas courts, has a special, significant sacredness and inviolability. The jury's verdict cannot be violated under our Texas Constitution. *TEX. CONST. art. I, sec. 15* (1984). The purity of the right to trial by jury is to be maintained.

*Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986), approved of Chief Justice Calvert's admonition that a Court of Appeals should analyze the *evidence on both sides of an issue.* Justice Garwood's instructions were also approved. A verdict should be set aside and a new trial granted only when the verdict is such *as to shock the conscience, to clearly indicate bias and, as such, to be clearly unjust.*

No evidence or hint to indicate bias or prejudice on the part of the jury is demonstrated. A careful reading and analysis of the record, including (but not limited to) the testimony of the Appellant's medical expert, would not shock the conscience. Query: Is the verdict of the jury "clearly unjust"? If we are to analyze the evidence on both sides, in at least a brief and general way—following the dictates of *Pool, supra*—we cannot so declare.

Direct evidence, circumstantial evidence and reasonable, logical inferences flowing therefrom are to be considered by us. Query: Why wasn't Todd Robbins called to the stand? Query: Why weren't the work records of Appellant, or Todd Robbins, obtained and introduced? *Pool, supra,* concedes that our task is not simple; indeed, it

is most difficult. The Supreme Court, in *Pool, supra,* cited with approval *Dyson v. Olin Corp.,* 692 S.W.2d 456, 458 (Tex.1985).

In *Dyson,* at 458, an intermediate court of appeals is admonished that the jury is the fact finding body and that the jury is the exclusive judge of the facts proven, the credibility of the witnesses and the weight to be given their testimony. But the ultimate charge to us, as an intermediate appellate court, is that an appellate trial by record before an appellate court (even assuming a complete and accurate record and a conscientious and careful review) has little resemblance to a live, flesh and blood, jury trial with the witnesses present before the peers. If an intermediate court indulges in weighing the evidence, then it is substituting its thought processes for those of the jury.

We are well aware of *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646 (Tex. 1988). In *Cropper, supra,* the Supreme Court wrote, at page 647:

"In this personal injury action, we decide whether a court of appeals has the authority to remand a cause for a new trial when it concludes that a jury's failure to find in favor of a party on a particular issue is 'against the great weight and preponderance of the evidence.' We hold that a court of appeals has the authority to review a 'failure to find' in the same manner in which it may review a jury's findings. TEX. CONST., art. V, sec. 6. We further hold that this review does not violate the right of trial by jury. TEX. CONST., art. I, sec. 15."

On September 6, 1989, the Supreme Court granted a writ of error to Caterpillar Tractor Company on its cross points after granting Anthony Paul Cropper's application. However, on September 20, 1989, the Supreme Court withdrew the granting of the application for writ of error of Caterpillar as being improvidently granted.

We have reviewed the non-findings as demonstrated above. Both *TEX. CONST. art. I, sec. 15* and *TEX. CONST. art. V, sec. 6* were adhered to by us. A helpful, practical suggestion would be for the Supreme Court, in this case, and other workers' compensation cases, to direct that the wage rate issues be submitted independently and without predicates. *See and compare also* Calvert, *Special Issues Under Article 6701d, Section 86(d), of the Texas Civil Statutes,* 34 Texas L.Rev. 971 (1956). The wage rate, wages, daily wages and weekly wages, were considered by us as well as hourly wages. Rereading and construing *TEX.REV.CIV.STAT.ANN. art. 8309, sec. 1(1)* (Vernon 1967), we fail to see that the hourly wages are referred to; nor do we see hourly wages referred to in the Pattern Charges, 2 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 21.01 (1989), and subsections and comments thereunder. Under *art. 8309, sec. 1(2),* the record is deficient on the days Todd actually worked in such immediately preceding year.

The Court is of the opinion that the Plaintiff/Appellant received a fair and impartial jury trial.

The other points of error advanced by Appellant have been carefully considered. They are also overruled. The judgment below is affirmed.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. The majority states: "The jury's verdict ... has a special, significant sacredness and inviolability. The jury's verdict cannot be violated under our Texas Constitution." What cannot be violated is the citizen's right to trial by jury. A court of appeals may reverse and remand for a new trial when it concludes that a jury's "failure to find" is against the great weight and preponderance of the evidence. Furthermore, our review of this "failure to find" does not violate the right to trial by jury. *Cropper v. Caterpiller Tractor Co.,* 754 S.W.2d 646, 651 (Tex.1988). We, as an intermediate appellate court have the responsibility to review a jury's verdict when presented to us in the proper procedural posture. *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex. 1986), is not a prohibition against overturning a jury verdict, simply an admonition

that the evidence should be detailed when doing so.

The jury never established a wage rate for appellant because that issue was predicated on determining (1) whether appellant had worked 210 days in the year preceding the injury or, if not, (2) whether a same or similar employee had worked the requisite 210 days. They failed to find either. I believe the negative finding as to a same or similar employee is against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. The majority does not distinguish the question of wage rate, wages, hourly wages, daily wages or weekly wages, from the question of a same or similar 210–day employee. They are separate and apart, yet the majority characterizes the testimony as the "wage rate issues(s)."

Concerning the 210–day employee issue, appellant testified on direct examination:

Q I believe you testified you thought you had but you weren't quite sure, and I think you testified you felt like you had. Do you know anybody else that worked at that job longer than you worked?

A Yes.

Q Who?

A Todd Robbins.

Q What position did Todd Robbins work in?

A Laborer for Owens–Corning.

Q How long had Todd Robbins worked at Owens–Corning when you came there in 1985, February?

A About a year and a half before I came. I had worked with him the previous year, too, and he worked there about a year and a half to two years before I came back the second time steady without a lay off.

Q I take it what you're saying is before you came back in February of 1985 for the last time you worked there, he had been there for almost a year or more before that?

A He had been there almost two years before that.

Q But he worked there for three years, approximately, before you were injured?

A Yes.

Q Was he ever laid off during that time?

A No.

Q Are you absolutely sure about that?

A He told me he wasn't.

[DEFENSE COUNSEL]: Your Honor, I'm going to object to that last statement as hearsay.

THE COURT: Sustained.

On cross-examination:

Q Ms. Crawford, do you recall where Todd Robbins is today?

A Yes, ma'am, he's employed by Union 76.

Q But he's not here in the courtroom. He's not here to testify?

. . . .

Q Now, you don't have any personal knowledge that he worked exactly 210 days or more during the exact 365 days preceding 11–15–85, do you?

A Yes, ma'am, I know he worked.

Q You know that he worked but you don't know how many days he worked.

A I know he worked non-stop for about two years.

Q He may have worked non-stop for two years but my question to you is: During the 365 days preceding 11–15–85 you don't know whether he worked more than 210 days, sitting here today?

A Have I seen written documents, no.

Q You don't have personal knowledge of that?

A I don't know it's personal knowledge.

Q You don't have any personal knowledge of that, do you?

A Did I see him with my own eyes, you mean?

Q Ma'am, it's a very simple question. Do you have personal knowledge that he worked more than 210 days during the exact 365 days preceding your injury?

[PLAINTIFF'S COUNSEL]: Your Honor, I'm going to object. She has already testified she knows the man worked for two to three years prior to the time she got hurt. She's asking the same question over and over and over, so I object—

[DEFENSE COUNSEL]: Your Honor, I'm entitled an answer. I'm entitled to cross examine the witness.

THE COURT: The objection is overruled.

WITNESS:

A I don't know how to answer you without going into hearsay.

Q All right. Let me rephrase my question and try to ask it again. Sitting here today, first of all, you don't have any records to show that Todd Robbins worked 210 days or more during the exact 365 days preceding your injury?

A No, I don't.

Q You don't have any other documentation to show the Jury that?

A No.

Q You don't remember the exact dates that Todd Robbins worked?

A No.

Q You don't have his personnel records here with you?

A No.

Q You don't know for a fact that he worked more than 210 days during the 365 day period preceding your injury?

A I know it. I know for a fact he did but—

Q How—

A I don't know how to do it without hearsay.

Q Ms. Crawford, you know that because your attorney has told you you need to prove that up in this case; isn't that right?

[PLAINTIFF'S COUNSEL]: Your Honor, I'm going to object. That is not true at all. She knows that this Court—

THE COURT: Okay. I can simplify it. If you know that only by hearsay, then you don't know it of your own personal knowledge.

WITNESS: Okay.

THE COURT: Does that help you in answering the question?

WITNESS: Okay.

Q You don't know that of your own personal knowledge, do you?

A No, I guess not.

On re-direct examination:

Q Let me ask you something that you do know of your own personal knowledge. Do you know for a fact that when you came to work on February 5, 1985 at—or February, 1985, that he had been there working for at least several months?

A Yes.

Q Was it obvious that he had been there working for several months?

A Yes.

The business manager of appellant's union testified on direct examination:

Q Now, do you understand the type of work they were doing at Performance Contractors?

A Yes I did.

Q I take it in your job do you have good knowledge of the work conditions and the amount of work that was available during the time period for the year or more prior to her injury of November 15, 1985?

A Yes.

Q Did you have personal knowledge that other employees of the same class as my client worked at least 210 or more days of the year preceding November 15, 1985 in the same or similar employment and in the same or neighboring place?

. . . .

A Yes.

Q Do you feel confident about that information—

A Yes, I do.

Q —based upon your knowledge of the work conditions and how people were working at that time?

A And the jobs, uh-huh.

Q Do you know Todd Robbins?

A Yes, I do.

Q Do you know if Todd Robbins worked at Performance Contractor Owens-Corning at the Union 76 job in excess of 210 days prior to November 15, 1985? Let me ask it this way: Do you know he had worked there for two continuous years?

A Yes, I do.

. . . .

Q But would it be fair to say based upon your expertise and your knowledge and having been Business Manager at the time, would it be fair to say that you know quite well that many people worked in the same or similar employment for at least 210 days prior to November 15, 1985?

A Yes.

Q And in the same or similar or neighboring places?

A Yes.

On cross-examination:

Q You didn't bring any records with you today at all, correct?

A No.

Q You don't have any documentations to show the Jury the daily wage or the hourly wage that you're talking about?

A No.

Q Do you know from personal knowledge what Todd Robbins or any other employee made during the year preceding November 15, 1985 on a daily basis?

A Only the contract, which would give our hourly wage.

Q But you can't say what they made on a daily basis?

A No, I ,ouldn't.

Q And you couldn't say what they made on a weekly basis?

A Not unless I know what they made an hour.

A summary of this testimony is that appellant initially testified unequivocally that Todd Robbins was a 210–day similar employee. Admittedly, she wavered when confronted with the "personal knowledge" questioning. However, the union business manager testified unequivocally and was never cross-examined on the 210–day employee issue, but only on the hourly or daily wage issue. Appellee produced no evidence to dispute the testimony that Todd Robbins was a 210–day similar employee. I find no evidence that Robbins was not a 210–day employee, but if there is any, clearly the evidence that Robbins was a 210–day employee outweighs any such evidence. Consequently, I would reverse and remand for a new trial. Because the majority does not, I respectfully dissent.