TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00376-CV






In re Michael R. Bradle, Individually and as Trustee of the


Mildred Roemer Irrevocable Trust






ORIGINAL PROCEEDING FROM BASTROP COUNTY







 Relator, Michael R. Bradle, Individually and as Trustee of the Mildred Roemer Trust,
seeks mandamus relief from an order by the district court effectively requiring the punitive damages
portion of a lawsuit to be tried to an entirely different jury than the one that determined the liability
and actual damage issues in the case. We hold that the district court abused its discretion in so
ordering, and we will conditionally grant the writ.


PROCEDURAL BACKGROUND


 Bradle timely filed a pretrial motion to bifurcate the punitive damages portion of the 
case below. (1) In the liability phase of the case, the jury returned a verdict favorable to the plaintiff
and real party-in-interest, Rosiland Roemer, on her claim against Bradle for conversion. The jury
found against Roemer on her claims against other defendants and on other claims against Bradle. 
It is the jury's affirmative findings on Roemer's conversion claim, and the corollary issue of malice,
that is the subject of this proceeding. These are the only findings that constituted a predicate to the
adjudication of the punitive damages claim.

 The original jury in this case returned its ten-two verdict on March 28, 2002. It found
that Bradle committed the tort of conversion against Roemer and that the value of the personal
property converted was $23,000. The jury also found Bradle to have acted maliciously in connection
with the conversion claim. The amount, if any, of punitive damages was not submitted to the jury
with the remainder of the case because the court granted Bradle's motion to bifurcate the trial on the
punitive damages issue.

 After the verdict was returned, Roemer filed a "Plaintiff's Motion for a 'Phase Two'
Exemplary Damage Trial or for a New Trial" complaining that because the district court "dismissed
the jury," it "preempt[ed] Phase Two of the trial, in which the jury would have heard evidence on
what is relevant only to the amount of exemplary damages." On June 6, 2002, the district court
signed a "final" judgment which, among other things, disposed of the claims against the other
defendants, but severed the conversion claim against Bradle. The judgment provides:


 the jury verdict having been received and accepted by the Court without objection by
any party, it is the Court's opinion that [Bradle is] entitled to a separate trial on the
issue of punitive damages. IT IS THEREFORE ORDERED that, as to [Bradle], a
separate trial shall be conducted for the purpose of determining the amount of
punitive damages, if any.


 . . . .


 IT IS FURTHER ORDERED that [Roemer] have judgment against [Bradle], jointly
and severally, in the amount of $23,000.00 actual damages for conversion.


 . . . .


 IT IS THEREFORE ORDERED that all claims asserted herein against [Bradle], be
and the same are hereby SEVERED and are ordered to be docketed under separate
cause number. This severance specifically includes all portion [sic] of this judgment
that related to claims against the said [Bradle]. The Clerk of the Court is hereby
ORDERED to docket said cause . . . under Cause No. 22,865-B. . . . All judgments
in these severed claims against [Bradle], shall remain interlocutory until such time
as a separate trial has been conducted on the issue of the amount, if any, of punitive
damages to be awarded to [Roemer] . . . .



It is undisputed that the jury's verdict was received and accepted by the district court without
objection; thereafter, the jury was discharged, again without objection. Currently, a separate trial
on punitive damages is set to be heard by a second jury on September 23, 2002. Bradle seeks
mandamus relief from this Court.


DISCUSSION


 An appellate court issues a writ of mandamus to correct a clear abuse of discretion 
when there is no adequate remedy at law. Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). A
court abuses its discretion when it reaches a decision so arbitrary and unreasonable that it amounts
to a clear and prejudicial error of law. Id.; In re Wallingford, 64 S.W.3d 22, 24 (Tex. App.--Austin
1999, orig. proceeding). Trial courts are accorded little discretion in deciding legal matters, and
mandamus will lie to remedy a clear failure by the trial court to analyze and apply the law correctly. 
See Walker, 827 S.W.2d at 840. Here, the district court clearly misapplied the applicable law in this
case. 

 When the supreme court first announced the scheme for bifurcated trials in cases
involving punitive damages, it said:

 We therefore conclude that a trial court, if presented with a timely motion, should
bifurcate the determination of the amount of punitive damages from the remaining
issues . . . . Under this approach, the jury first hears evidence relevant to liability for
actual damages, the amount of actual damages, and liability for punitive
damages . . . , and then returns findings on these issues. If the jury answers the
punitive damage liability question in the plaintiff's favor, the same jury is then
presented evidence relevant only to the amount of punitive damages, and determines
the proper amount of punitive damages, considering the totality of the evidence
presented at both phases of the trial.



Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 30 (Tex. 1994) (emphasis added). The
Legislature subsequently enacted chapter 41 of the Texas Civil Practices and Remedies Code which
essentially codified Moriel, among other things. Section 41.009 of the statute provides in relevant
part:



 On motion by a defendant, the court shall provide for a bifurcated trial under this
section . . . .



 . . . .



 In the first phase of a bifurcated trial, the trier of fact shall determine:

 
 
 liability for compensatory and exemplary damages; and 

 
 the amount of compensatory damages.

 
 If liability for exemplary damages is established during the first phase of a
bifurcated trial, the trier of fact shall, in the second phase of the trial, determine
the amount of exemplary damages to be awarded, if any.




Tex. Civ. Prac. & Rem. Code Ann. § 41.009(a) (West 1997). 

 Although this is a case of first impression, the result appears to be clear. Moriel
expressly, and section 41.009 implicitly, mandates that the same jury that hears the liability phase
of a case must also hear the punitive damages phase. The district court's order requiring the punitive
damages to be tried to a different jury violates both Moriel and section 41.009(a). (2) The district court
clearly abused its discretion in ordering a second jury.

 Each party has a duty when a jury returns a verdict to promptly examine the verdict
before the jury is discharged. See Pate v. Texline Feed Mills, Inc., 689 S.W.2d 238, 243 (Tex.
App.--Amarillo 1985, writ ref'd n.r.e.). Here, it was Roemer's burden to raise the matter of the
remaining assessment of punitive damages before the jury was discharged. Failure to object before
the jury is discharged acts as a waiver of any untried issues. See Fleet v. Fleet, 711 S.W.2d 1, 3
(Tex. 1986); Continental Cas. Co. v. Street, 379 S.W.2d 648, 650-51 (Tex. 1964); Lewis v. Texas
Employers' Ins. Ass'n, 246 S.W.2d 599, 601 (Tex. 1952) ("If the trial judge was to correct the defect
he had to do it before the jury was discharged . . . . Under our procedure a party dissatisfied with a
verdict has ample opportunity to present the matter to the trial judge before the verdict is officially
accepted and the jury discharged. He has the duty to do so."). It is undisputed that Roemer did not
raise the issue and did not object to the jury's discharge.

 When a verdict has been affirmed in open court, and the jury has separated and
become accessible to the parties, the only remedy for a mistake in the verdict is setting aside the
verdict and granting a new trial. Wanda Petroleum Co. v. Reeves, 385 S.W.2d 688, 690-91 (Tex.
Civ. App.--Waco 1964, writ ref'd n.r.e.); see also Burchfiled v. Tanner, 178 S.W.2d 681, 683 (Tex.
1944). Once a jury is discharged from their oaths, they are subject to contact with and influence by
the parties and others so that the jury cannot be reconstituted. See Caylat v. Houston E. & W. Ry.
Co., 252 S.W. 478, 482-83 (Tex. 1923). In Caylat, the supreme court stated:


 "when the verdict has been affirmed in open court and the jury have separated and
become accessible to the parties, the only remedy for a mistake is by setting the
verdict aside and granting a new trial . . . ." (3) [This rule] guards against any possible
irreparable injury to the parties litigant, and satisfies every requirement of complete
justice. The only consideration of public policy involved in denying a correction in
a clear case of clerical mistake is the expense and delay incident to a new trial . . . . 
We are clearly of the view that the safer and more salutary rule is to deny a correction
in such cases; and to order a new trial as the full measure of the relief against the
mistake.



Id. This rule remains valid today. The court of appeals in Branhan v. Brown, 925 S.W.2d 365 (Tex.
App.--Houston [1st Dist.] 1996, no writ), held that:


 once the judge had accepted the verdict and discharged the jury, he had no authority
to later order the jury to redeliberate; he should have proceeded to judgment on the
original 11-1 verdict. Therefore, we hold that the trial court erred in sending the jury
back to make any corrections or redeliberate on their verdict after the trial court
accepted the verdict and discharged the jury.



Id. at 368. Once a jury has been discharged and has mingled with the public, it is error to reconvene
that jury. Id. 

 Furthermore, requiring the punitive damages issue be tried to a jury different from
the one that tried the liability and actual damages issues operates to abridge Bradle's fundamental
constitutional rights to trial by jury and to due process. In Texas, a jury's verdict has a "special,
significant sacredness and inviolability." Crawford v. Standard Fire Ins. Co., 779 S.W.2d 935, 941
(Tex. App.--Beaumont 1989, no writ). The Texas Constitution requires that the right to trial by jury
remain inviolate. Tex. Const., art. I, § 15 (1984); Crawford, 779 S.W.2d at 941. There is no
indication in the record that the original jury was not validly constituted and impaneled. It heard all
the evidence in this case, except the admissible evidence to be offered only during the punitive
damages phase of the case. The plaintiff allowed the original jury's verdict to be returned and
accepted and the jury discharged without objection. We hold that requiring a different jury to
determine punitive damages violates Bradle's right to trial by the jury lawfully chosen and impaneled
to try this case. Denial of the constitutional right to trial by jury amounts to an abuse of discretion
for which a new trial is the only remedy. McDaniel v. Yarbourgh, 898 S.W.2d 251, 253 (Tex. 1995).

 In addition, we hold that requiring that a different jury determine punitive damages
violates Bradle's right to due process as recognized in BMW of N. Am, Inc. v. Gore, 517 U.S. 559,
568 (1996); Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 22 (1991); and Moriel, 879 S.W.2d at
30. The district court's order effectively means that the amount of punitive damages will be tried
and determined in isolation from the liability and actual damages aspects of the case. 

 The imposition of "grossly excessive" punitive damages on a tortfeasor violates the
Due Process Clause of the Fourteenth Amendment. Gore, 517 U.S. at 562. Proportionality between
the amount of punitive damages assessed and the liability facts and actual damages suffered is the
"most important indicium of reasonableness" when determining whether a punitive damage award
is constitutional. Id. at 575; see also Haslip, 499 U.S. at 21. Punitive damages are not designed to
compensate or enrich, instead their purpose is to punish "outrageous, malicious, or otherwise morally
culpable conduct" and to deter others from committing the same or similar conduct in the future. 
Gore, 517 U.S. at 568. Special emphasis is placed on the principle that punitive damages may not
be disproportionally greater than the gravity and severity of the misconduct in issue and the injury
sustained. Id. at 576. 

 In Texas, proportionality is achieved by having punitive damages assessed based on
a totality of the evidence from both phases of the bifurcated trial. Southwest Ref. Co. v. Bernal, 22
S.W.3d 425, 433 (Tex. 2000). A jury assessing the amount of punitive damages must necessarily
know of and consider the severity of the wrongdoing and the extent of actual damages. Id.; see also
Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981) ("Factors to consider in determining
whether an award of exemplary damages is reasonable include (1) the nature of the wrong; (2) the
character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation
and sensibilities of the parties concerned; and (5) the extent to which such conduct offends a public
sense of justice and propriety."). (4) The same jury must, therefore, sit in both phases of the trial. 

 In Bernal, the supreme court struck down a class certification, in part, because the
trial court's litigation plan allowed the issue of punitive damages to be tried before issues of
causation and actual damages, and required the jury to assess punitive damages before it heard the
"totality of the evidence." Bernal, 22 S.W.3d at 433. The plan was defective because its structure
did not ensure that punitive damages would have some understandable relationship to the severity
of the offense and the amount of actual damage. Id.

 The district court in this case did not grant a new trial; it granted judgment on the
jury's verdict for actual damages against Bradle on the conversion claim. The issues of liability and
actual damages would not remain to be retried in the second trial. Therefore, any second jury
considering exemplary damages would probably not have the benefit of the totality of the evidence
in undertaking its deliberations.


CONCLUSION


 For the reasons set forth above, we conditionally grant the writ of mandamus
and instruct the district court to vacate its order of June 6, 2002, to the extent that it orders a separate
trial of the issue of punitive damages by a second jury after discharge of the original jury.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Yeakel

Filed: August 16, 2002 

Publish

1. See Tex. Civ. Prac. & Rem. Code Ann. § 41.009 (West 1997); Transportation Ins. Co. v.
Moriel, 879 S.W.2d 10, 30 (Tex. 1994). 
2. See Southwest Ref. Co. v. Bernal, 22 S.W.3d 425, 433 (Tex. 2000).
3. Caylat v. Houston E. & W. Ry. Co., 252 S.W. 478, 482 (Tex. 1923) (quoting and adopting
rule in Weston v. Gilmore, 63 Me. 493 (Me. Ct. App. 1874)).
4. The Kraus factors have been approved as jury instructions to be given in punitive damage
jury charge submissions. Owens-Corning Fiberglass Corp. v. Malone, 972 S.W.2d 35, 40 (Tex.
1998).